COMMONWEALTH *vs.* JAMES F. HILL.

Middlesex.   October 19, 1976. — February 17, 1977.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Insanity.   Due Process of Law,* Competency to stand trial.   *Practice, Criminal,* Competency to stand trial.

In the circumstances the trial judge was not constitutionally required to conduct on his own motion a separate hearing on the defendant's competence to stand trial before finding the defendant guilty. [134-135]

A posttrial dispositional report submitted by the assistant medical director of Bridgewater State Hospital stating that the defendant was not competent to stand trial did not require the trial judge to vacate findings of guilty where following receipt of the report the judge conducted a combined hearing on the defendant's competency and on disposition and where there was other evidence to warrant the judge's conclusion that the defendant had been competent to stand trial. [135-136]

Although at a robbery trial the Commonwealth presented no expert testimony to refute psychiatric testimony for the defendant which cast doubt on his sanity, other evidence before the judge warranted a finding that the defendant was mentally competent when he committed the crime. [136-137]

INDICTMENT found and returned in the Superior Court on January 5, 1972.

The case was heard by *Dimond*, J.

*Robert S. Potters* for the defendant.

*James W. Sahakian*, Special Assistant District Attorney, for the Commonwealth.

KEVILLE, J. The defendant Hill was indicted for robbery of a bank in Natick with an accomplice on December 14, 1971. On May 11, 1973, he was found guilty after a jury waived trial in which his sole defense was that he was insane at the time of the commission of the crime. On September 17, 1973, he was sentenced to the Massachusetts Correctional Institution at Walpole. He appeals under G. L. c. 278, §§ 33A-33G, from his conviction and from the denial of motions for a new trial.

On appeal the defendant contends that (1) the trial judge was constitutionally required on his own motion to afford Hill a hearing on his competence to stand trial prior to rendering a "verdict"; (2) the judge should have vacated Hill's conviction because, at the dispositional hearing, there was overwhelming evidence that he was incompetent to stand trial; and (3) the evidence was insufficient to support a finding beyond a reasonable doubt that Hill was sane when the robbery took place. We conclude that there was no error.

On January 10, 1972, while awaiting trial at the Billerica house of correction, the defendant had been committed to the Bridgewater State Hospital for thirty days' observation under G. L. c. 123, § 18 (a), as amended by St. 1971, c. 760, § 17. A psychiatric report of that commitment was before the judge when the trial commenced on May 7, 1973.

At a bench conference at the outset of trial, defense counsel informed the judge that the defense would be not guilty by reason of insanity and that the defendant wished a jury waived trial. The judge then inquired of counsel whether the defendant's competence to stand trial was in issue. Defense counsel stated that, while Hill had been unable to cooperate in planning his defense because he had no recollection of having committed the crime, he understood the judicial process and the nature of the charges brought against him. Counsel stated in conclusion that he believed that the defendant "has the capacity to stand trial under the Massachusetts rule."

Following the bench conference, the judge interrogated

the defendant about his proposed waiver of a jury trial and whether he would be able to participate with his attorney in his defense. Except for his assertion that he lacked memory of the circumstances of the robbery, the defendant replied that he could participate and that he understood the meaning of the jury waiver which his attorney had requested.

The section 18 (a) "staff report" had been submitted to the court on February 4, 1972, by the acting medical director of the hospital. The report described Hill's mental illness as "Schizophrenic Reaction, Paranoid type" but concluded that the "[p]atient is competent to stand trial. He understands the nature of the charges against him as well as the possible consequences if found guilty. He has a lawyer, whom apparently he is able to cooperate with."[1]

During the trial, a statement of Hill's accomplice was introduced in evidence which contained a detailed account of the defendant's participation in the robbery. The defendant called two witnesses, a psychiatrist and a psychologist, to support his claim of insanity. The Commonwealth offered no expert testimony in rebuttal but did offer the testimony of a deputy master of the Billerica house of correction who had observed the defendant during a period of seventeen months, commencing directly after the robbery, while he was in custody prior to trial. His testimony was that he had observed nothing abnormal or unusual in his conversations with the defendant, that the defendant had been elected by fellow prisoners to serve on an advisory board which met with prison administrators and that he had been consulted by other prisoners with respect to their problems.

The judge did not conduct a separate hearing on the question of Hill's competence prior to or in the course of trial. However, several times during trial the judge supplemented defense counsel's assurances that his client un-

---

[1] The report recited that Hill claimed that he was found not guilty by reason of insanity on various charges in New York State and was placed in a New York State hospital from which he had escaped to become involved in the present offense.

derstood what was going on with his own direct interroga-
tion of the defendant. At the end of the trial the judge,
after considering the question on his own motion, con-
cluded that Hill had been competent to stand trial. In ar-
riving at that conclusion, he took into account the section
18 (a) report, interrogation of the defendant and his coun-
sel, observations of the defendant made throughout the
five-day trial, the testimony of the defendant's experts and
that of the deputy master of the house of correction, and
also the statement of the defendant's accomplice. The
judge concluded that the Commonwealth had established
the defendant's sanity and guilt beyond a reasonable
doubt. However, before imposing sentence he ordered that
the defendant be examined at Bridgewater under the
provisions of G. L. c. 123, § 15(e), inserted by St. 1970,
c. 888, § 4,[2] for the purpose of aiding the judge in sen-
tencing.

Pursuant to that order, the defendant was examined on
June 25, 1973, at Bridgewater and his mental condition
evaluated by the diagnostic staff under the assistant medi-
cal director. The report to the court of that examination
contained the conclusion that the defendant was incom-
petent to stand trial at that time. On the basis of that re-
port, the judge, upon his own motion, postponed disposi-
tion of the case and continued the hearing to allow the
parties to prepare for an evidentiary hearing on the ques-
tion of the defendant's competence to have stood trial.
That hearing took place on September 17, 1973.[3] The

[2] General Laws c. 123, § 15(e), provides: "After a finding of guilty
on a criminal charge, and prior to sentencing, the court may order a
... period of observation ... at the Bridgewater state hospital .... The
purpose of such observation or examination shall be to aid the court in
sentencing."

[3] Although there appears to have been some confusion as to the scope
of this hearing, our reading of the record indicates that the judge in-
tended that it should cover both the question of Hill's competency to
have stood trial and the question of disposition. In the course of that
proceeding, defense counsel stated: "My understanding is that this
hearing was in part not only for the purpose of determining disposition,
but also to clarify what was meant by ... [the assistant medical direc-

assistant medical director then testified that the defendant was incompetent "for trial purposes." Neither the defendant nor the Commonwealth called other witnesses. However, the judge included in the record a letter addressed to the court and written by the defendant on April 23, 1973, less than a month prior to the trial. In that letter the defendant accurately and rationally sought dismissal of the charges against him for alleged failure to have given him a speedy trial.

In June and in August of 1975, the judge held hearings on two motions of the defendant for a new trial. At the hearings on these motions Hill relied solely upon his contention that prior to the finding of guilt he was not afforded an evidentiary hearing on his competence to stand trial. Those motions were denied.

1. *Requirement of Hearing on the Defendant's Competency to Stand Trial.*

We conclude that there was no error in the denial of the defendant's motions for a new trial. The record does not support Hill's claim that his right to due process under the United States Constitution and our Declaration of Rights was violated by the alleged failure of the judge to conduct an evidentiary hearing prior to conviction on his competence to stand trial. The test to be applied in determining the competence of a defendant to stand trial is "whether he has sufficient *present* ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him" (emphasis supplied). *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971), quoting from *Dusky* v. *United States*, 362 U. S. 402 (1960). In *Drope* v. *Missouri*, 420 U. S. 162, 171 (1975), the requirement has been stated thus: "It has long been accepted that a person whose mental condition is such that he lacks

___

tor] in terms of the finding of the staff with relation to the defendant's competency." The judge replied, "Yes. I think that's a reasonably fair statement. The main purpose of the hearing was disposition, but I was not confining it to that because a question has been raised by the report, and I wanted clarification of the report."

the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense, may not be subjected to a trial."

In those situations where there exists doubt whether the defendant satisfies the test enunciated in *Dusky*, the judge must, on his own initiative, conduct a full hearing on the issue. *Vailes, supra,* at 524. *Pate* v. *Robinson,* 383 U. S. 375, 385 (1966). That doubt has been more fully described as a "substantial question of possible doubt." *Vailes, supra,* quoting from *Rhay* v. *White,* 385 F. 2d 883, 886 (9th Cir. 1967). At the time of trial the judge properly relied upon the section 18 (*a*) psychiatric report then before him as one of the elements bearing on the issue of Hill's competence. *Commonwealth* v. *Devereaux,* 257 Mass. 391, 396-397 (1926). *Vailes, supra,* at 524. He could also have taken into consideration the defendant's responses to questions put to him concerning his understanding of the proceedings and the judge could also draw upon his personal observations of the defendant's unremarkable conduct throughout the trial. *Vailes,* 360 Mass. at 525. *Drope* v. *Missouri,* 420 U. S. at 180. *United States ex rel. Trantino* v. *Hatrak,* 408 F. Supp. 476, 484 (D.N.J. 1976). The representations made to the judge by defense counsel and the position taken by him that Hill was competent, and the testimony of the deputy master of his personal observations of the defendant lent further support to the judge's conclusion as did the statement of the accomplice with respect to the defendant's management of the commission of the crime.

2. *Vacation of Conviction.*

There was no error in the action taken by the judge upon receipt of the posttrial dispositional report submitted by the assistant medical director of the Bridgewater State Hospital or in the judge's refusal to vacate his finding of guilt following the hearing which he had ordered on the strength of the report which raised the question of the defendant's competence. The judge properly recognized that the report, which concluded that Hill was not then

competent to stand trial, called for a "meaningful" review of that question. *United States* v. *McEachern*, 465 F. 2d 833, 838 (5th Cir.), cert. den. 409 U. S. 1043 (1972). *United States* v. *Makris*, 535 F. 2d 899, 904 (5th Cir. 1976).

While the hazards of retrospective competency hearings have been recognized (see *Pate* v. *Robinson*, 383 U. S. at 386-387; *Drope* v. *Missouri*, 420 U. S. at 183), nonetheless, there is no inflexible rule against a restrospective determination of competence particularly where the available evidence is sufficient to guarantee reliability. *Makris*, 535 F. 2d at 904. *Bruce* v. *Estelle*, 536 F. 2d 1051, 1058 (5th Cir. 1976). At such a hearing the judge may rely upon records of psychiatric examinations of the defendant conducted prior to trial, the trial transcript, and his own recollections of the defendant's conduct at trial in addition to testimony adduced at the hearing itself. *Makris*, *supra*, at 904-905. While expert testimony such as that of the assistant medical director in this case may furnish guidance for the judge, he is not bound to reach the expert's conclusion and he may be persuaded by other evidence which leads to the opposite result. *Id.* See *Commonwealth* v. *Smith*, 357 Mass. 168, 177 (1970); *Commonwealth* v. *Masskow*, 362 Mass. 662, 671 (1972).

3. *The Defense of Insanity.*

There remains the question of the defendant's sanity at the time of the commission of the crime. Under our law "[a] person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." *Commonwealth* v. *McHoul*, 352 Mass. 544, 546-547 (1967). *Commonwealth* v. *Kostka*, 370 Mass. 516, 532, n. 15 (1976). And the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant was sane. *Commonwealth* v. *Johnson*, 188 Mass. 382, 388 (1905). *Commonwealth* v. *Mutina*, 366 Mass. 810, 815, n. 2 (1975).

Although there was testimony of the psychiatrist and

the psychologist, witnesses for the defendant, which cast doubt upon the defendant's sanity, the judge could have found such testimony to have been inconclusive, and there was ample evidence introduced by the Commonwealth to support the judge's finding that the defendant was mentally competent beyond a reasonable doubt at the time of the commission of the crime. The fact that the Commonwealth presented no expert testimony at trial as to Hill's sanity except for the section 18 (*a*) report did not preclude a finding that he was sane. Such a finding may be warranted even if all of the psychiatric testimony points to his insanity. *Commonwealth* v. *Smith*, 357 Mass. at 177. *Commonwealth* v. *Masskow*, 362 Mass. at 671.

The judge could have taken other factors into account including the presumption that most men are sane. *Commonwealth* v. *Clark*, 292 Mass. 409, 411 (1935). *Commonwealth* v. *Francis*, 355 Mass. 108, 111 (1969). *Smith, supra,* at 179. *Kostka, supra,* at 535. The defendant's behavior immediately prior to, during, and directly following the commission of the crime was a pertinent consideration. *Commonwealth* v. *Ricard,* 355 Mass. 509, 514 (1969). *Masskow, supra. Commonwealth* v. *Boyd,* 367 Mass. 169, 183-184 (1975). *Commonwealth* v. *Walker,* 370 Mass. 548, 581 (1976). In addition to other evidence, the judge could have found from the statement of Hill's accomplice that the crime had been planned and executed under Hill's direction and that Hill was at that time in full command of his faculties.

*Judgment affirmed.*