B. J. RHAY, Superintendent, Washington
State Penitentiary, Appellant,

v.

Don Anthony WHITE, Appellee.

No. 21328.

United States Court of Appeals
Ninth Circuit.

Nov. 28, 1967.

John J. O'Connell, Atty. Gen., Olympia, Wash., Charles O. Carroll, King County Pros. Atty., Seattle, Wash., Stephen Way, Olympia, Wash. (argued), for appellant.

Young, Huff & Regan, James C. Young (argued), Seattle, Wash., R. Max Etter (argued), Spokane, Wash., Weyer, Sandelin, Sterne & Gaskill, David A. Weyer (argued), Seattle, Wash., for appellee.

Before JOHNSEN,* BARNES and ELY, Circuit Judges.

JOHNSEN, Circuit Judge.

We affirm the District Court's order in habeas corpus directing that appellee White be released from confinement by the Superintendent of the Washington State Penitentiary unless the State of Washington grants him a new trial within 120 days.

White is under conviction and sentence for two offenses of murder committed on the same day and made the subject of trial together. On the first slaying he was found guilty of murder in the first degree and given a death sentence, and on the second he was found guilty of murder in the second degree and given a life sentence.

The judgments were affirmed by the Supreme Court of the State of Washington in State v. White, 60 Wash.2d 551, 374 P.2d 942, and thereafter White un-

---

* Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

successfully engaged in collateral attack on various grounds and exhausted his state remedies in respect thereto. See White v. Rhay, 64 Wash.2d 15, 390 P.2d 535, 537, and White v. Rhay, 65 Wash.2d 711, 399 P.2d 522.

Only one of these grounds is involved in the appeal here, since it was on this single basis that the District Court granted the writ. That ground is whether on the elements before the trial court the situation presented such a substantial question of possible doubt as to White's competency to stand trial that due process demanded that the court should have held a hearing and made a determination of the question. No request was made by counsel for such a hearing and the court engaged in none. On White's habeas corpus attack before the Washington Supreme Court, that Court disposed of the matter on the summary basis that it could not find from White's testimony on the trial that "he was unable to effectively assist his counsel in the defense of the cause" and that on the complete record "we hold the * * * ground * * * to be without merit".

■ A claim that one has been convicted while he was without competency to stand trial, which has not had previous adjudication, is not ordinarily subject to disposition without an evidentiary hearing, unless it can be held to be wholly devoid of any substance, not on the basis of exercised judgment but as a matter of clear legal frivolousness. But beyond this, the situation here was in any event one, as in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, where elements were involved that were beyond the information of the trial record, as the hearing held by the District Court clearly demonstrates.

■ These elements, such as White's attitude, actions and other psychological aspects not shown by the record, when coupled with and viewed in the light of some of the testimony brought out on the trial as to his history of chronic mental disturbances, paranoid traits, violent behavioral explosions and previous institutional diagnoses, from the time he was a boy to his commission at age 22 of the murders involved, were such as in our opinion to entitle the District Court to conclude, as it did, that on the whole situation "there were facts before the court of such substantial significance as should have compelled the trial court, upon its own motion and upon its own initiative, to have recessed the trial and conducted a hearing upon the question of whether the petitioner was mentally competent to give aid and assistance to his counsel and participate in his own defense".

Part of the psychiatric testimony at the trial had been to the effect that White had such paranoid traits as to make him unable to trust people. With relevance as to this, there was testimony at the hearing before the District Court that for the most part White had sat rigid during the course of the trial, manifestative, as the witness put it, that, in concern about the trial itself, "he just wasn't there". One of his counsel, both of whom were court appointed, testified that communication between them had been difficult. A defense psychiatrist who had sat in the courtroom and observed White because of an apprehensiveness from his previous diagnosis that, in the focus which White's paranoid faculties could make, his volatile nature might cause him to erupt explosively against someone in the courtroom, testified before the District Court that White's rigidity during the trial represented a state of mental tension and stress and that "he was barely in control of himself". The witness testified further that from talking with White he felt that White had become imbued with hatred toward the prosecuting attorney, which "I don't think had very much to do with the trial itself" but which primarily was prompted by the fact that "he felt that the prosecutor was laughing at him at times". One of White's counsel testified that he had complained that the prosecutor's loud voice bothered him and that he was thereupon moved to another

seat "for fear that he would break loose". Counsel further testified that three or four times during the trial it had been necessary to request a special recess because of White's indication to him that "he couldn't take it anymore", and that on these occasions they would engage in walking 15 or 20 minutes in the hall before returning to the courtroom.

The record shows that at the time of the first of these recess requests White's counsel had informed the trial judge in chambers that the psychiatrist who had been observing him in the courtroom and checking up on him in the evening was of the opinion that White "was very close to a psychotic break"; that counsel had further stated to the judge that he and his co-counsel both "had noticed a deterioration in the defendant's condition during the last few days"; that a call was thereupon made to the psychiatrist from the judge's chambers, but the doctor was unavailable; that when White subsequently returned from a walk with the deputy sheriff and his counsel indicated that they thought he had gotten hold of himself, the court made the statement for the record that they would "go ahead with the trial as long as it appears to defense counsel and to the court that the defendant understands what is happening and the nature of the trial proceedings, and as long as he does not manifest signs of any break or psychotic episode or other illness", but that counsel were to be free to inform the court at any time that they felt a recess was desirable.

The trial judge, who was called as a witness before the District Court by White's counsel, stated that he was not able to remember very clearly any details about White's attitude or demeanor during the two weeks trial, since this had occurred some six years before. He did recall the occasion of White's counsel requesting the special recess and advising him that the psychiatrist had said that White was "near to a psychotic break", and his trial notes showed that there had been a number of afternoons on which a special recess had been taken but there was nothing in the notes indicating the reason therefor.

He testified generally that, in his preoccupation with taking trial notes, observing witnesses and keeping watch of the jury, "I didn't observe the defendant closely, except from time to time I would look at him to see whether everything was all right, or appeared to be all right", but that "at no time did I have any serious doubt that he was able to answer his counsel's questions and participate in the trial". One thing, however, that had remained with him was the fact that in White's attitude and in his testimony on the stand there had been no indication of "any remorse or concern" about the killings, which he admitted having committed, but of whose circumstances the trial record shows he gave almost weird impression or description.

The trial judge, further, in response to an inquiry by White's counsel as to whether he recalled a discussion about not leaving some knives, which had been put in evidence, where they might be available to White on taking the witness stand, admitted that "this has a sort of familiar ring, but I'm not clear about it", although "I'm inclined to think maybe I would have felt some concern about it in view of all the testimony there had been * * *". "I mean the psychiatric testimony indicated that Mr. White was very disturbed, and the defense claims were that he had no control over his action, and it would be natural for me to have some concern, but I can't at this moment say definitely I recall having had it".

We have not attempted to set out all the elements of possible suggestiveness or implication in the situation. As in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, it would seem that, from White's long history of mental disturbances, the repeated outbursts of violence in which he had engaged against others, the many strange incidents which had occurred in his general behavioral conduct, and the psychiatric evaluations which they had obtained of all this, his counsel had become imbued with such be-

lief and faith in the defense of insanity as to his commission of the offenses that they had allowed their thoughts, application and concern to be controlled by this representational focus.

They admitted that they had not devoted any particular attention to the matter of White's competency to be tried, nor had they requested their psychiatrists to evaluate this aspect, although they had in the written plea which they had filed alleged that White "was mentally irresponsible at the time of the commission of the crimes charged herein, and that such mental irresponsibility still continues". It further is possible to understand how, in the battle line drawn as to White's mental responsibility for the crimes, the trial judge's consideration could unthinkingly have become focused upon this aspect only of the question of White's legal competency.

But as Pate v. Robinson, supra, makes clear, the question here is not why counsel failed to request a competency hearing or why the court failed to hold one on its own initiative, but whether, no less on hindsight than by foresight, there were elements of such indication in the situation as, if proper notice had been taken of them, could present a substantial question of possible doubt as to White's competency to stand trial. As we have indicated, the situation was in our opinion one which the District Court could properly hold was of that nature.

Equally we can see no question as to the right of the District Court here, under Pate v. Robinson, to require that White be afforded the opportunity to have the matter of his competency to be tried determined in portraying relationship to his trial proceedings, as ought initially to have been done on the circumstances which were involved. Such a determination is, as in Pate v. Robinson, processively entitled to be called for here

because of the difficulties which would be inherent in now satisfyingly getting at the indications and conditions of the original trial. Among these are the lapse of six years which has occurred since the time of that trial; the fact that the psychiatrists' examinations and diagnoses as then engaged in had been without any thought or focus on this question as to that trial; and the apparent lack of definite recollection as to conditions and incidents involved as to White, which is demonstrated by the testimony of the trial judge above.

It may be noted that even the dissenting opinion in Pate v. Robinson was in accord that, if the situation there were sufficient in its indications to present a substantial question of possible doubt as to trial competency and so to have imposed a duty on the trial court to hold a hearing, then "a new trial seems not too drastic an exaction in view of the proof problems arising after a significant lapse of time". 383 U.S. at 388, 86 S.Ct. at 843. A footnote thereto added: "The constitutional violation alleged is the failure to make an inquiry. In the more usual case, the simple claim that a defendant was convicted while incompetent during the trial, there is of course no proof of a constitutional violation until the incompetence is established in appropriate proceedings". Ibid.

The basis on which we have upheld the District Court's action makes unnecessary any discussion of appellant's other contentions. We merely add that in what we have said there is of course no implication intended on whether White may have been without trial competency. That question will be for the trial court, if the State grants him a new trial, and necessarily it must now be related to the time of such trial.

Affirmed.[1]

1. Appellee White has purported to take a cross-appeal from the determination against him by the District Court of some other questions, but the purported cross-appeal is dismissed for want of a certificate of probable cause as a basis therefor.