COMMONWEALTH *vs.* JAMES F. HILL.

Middlesex. October 4, 1977. — April 19, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Due Process of Law,* Competency to stand trial. *Practice, Criminal,* Competency to stand trial. *Insanity.*

This court reviewed a defendant's claim of incompetence to stand trial even though the issue was not raised at trial. [54-59]

Evidence of a defendant's long history of psychological problems and irrational and bizarre behavior, the testimony of a psychologist and a psychiatrist as to his mental condition, and the psychiatrist's testimony indicating a question whether the severe delusions suffered by the defendant prevented his effective cooperation with counsel clearly raised a substantial doubt as to his competence to stand trial and required that the judge on his initiative hold an evidentiary hearing on that question. [59-62]

The prejudice caused to the defendant by the failure to hold a hearing before conviction on his competence to stand trial was not nullified by a purported finding of competence at the time of sentencing four months after the conviction or by the affirmance of the finding of competence two years after the sentence in connection with the denial of the defendant's motions for new trial. [62]

INDICTMENTS found and returned in the Superior Court on January 5, 1972.

The cases were heard by *Dimond, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert S. Potters* for the defendant.

*James W. Sahakian,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J. The defendant, having been indicted for the crimes of armed robbery, assault by means of a dangerous weapon, and unlawful carrying of a firearm, waived his right to trial by jury and was tried by a judge of the Superior Court sitting without a jury. There was ample evidence implicating the defendant in the armed robbery at a bank, and he did not dispute that evidence but relied instead on the defense of insanity. The trial was held under the provisions of G. L. c. 278, §§ 33A-33G, and the defendant was found guilty on the three indictments. He filed motions for a new trial which were denied. He then appealed to the Appeals Court which affirmed the convictions, 5 Mass. App. Ct. 130 (1977), and we granted his request for further appellate review.

The basic issue before us is whether, in the circumstances of this case, the defendant's rights were violated by reason of the failure of the judge, either before or during the trial, to (a) recognize that there was a serious question about the defendant's competence to stand trial, and (b) hold an evidentiary hearing and make a determination of that question. We conclude that the defendant's rights were violated, and that the judgments against him must be reversed. We thus do not reach the issue whether the evidence at the trial was sufficient for the judge to find beyond a reasonable doubt that the defendant was criminally responsible under the rule stated in *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967).

1. It has long been the law of this Comonwealth that the "trial, conviction or sentencing of a person charged with a criminal offence while he is legally incompetent violates his constitutional rights of due process" (footnote omitted), whether under the Fourteenth Amendment to the Constitution of the United States or under art. 12 of the Declaration

of Rights of the Constitution of this Commonwealth. *Commonwealth* v. *Vailes,* 360 Mass. 522, 524 (1971). This same fundamental rule was also stated in *Drope* v. *Missouri,* 420 U.S. 162, 171 (1975), in the following language: "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. Thus, Blackstone wrote that one who became 'mad' after the commission of an offense should not be arraigned for it 'because he is not able to plead to it with that advice and caution that he ought.' Similarly, if he became 'mad' after pleading, he should not be tried, 'for how can he make his defense?' 4 W. Blackstone, Commentaries 24."

2. The test for determining the competency of an accused person to stand trial was stated in *Dusky* v. *United States,* 362 U.S. 402, 402 (1960), to be "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." That is the test which was applied by this court in *Commonwealth* v. *Vailes, supra* at 524, and again in *Commonwealth* v. *Kostka,* 370 Mass. 516, 522 (1976). See also Note, Incompetency to Stand Trial, 81 Harv. L. Rev. 454, 457-459 (1967). The present case raises no issue about the correctness or current applicability of the test to any particular set of facts. Rather, it involves the question whether the judge should have initiated procedures, including an evidentiary hearing, for the determination of facts against which this test could be applied in determining the defendant's competence to stand trial.

3. It should be noted at this point that the defendant did not, at any time prior to or during his trial, assert that he was incompetent to stand trial. He was convicted on May 11, 1973, and sentenced on September 17, 1973. The first time he raised the competence issue was a motion for a new trial filed by him pro se on February 12, 1974. Before that motion was fully heard and decided, the defendant, acting

through his present appellate counsel, filed a second motion for a new trial on June 20, 1975, based on the ground that he had not been afforded a hearing on his competence to stand trial. On August 13, 1975, after hearing, both motions were denied.

We have held quite consistently that a party is not entitled to appellate review on an issue which he could have raised, but did not raise, at his trial. *Commonwealth* v. *Johnson*, 374 Mass. 453, 463-465 (1978). *Commonwealth* v. *Underwood*, 358 Mass. 506, 510-512 (1970). We have also held equally consistently that we will not permit a motion for a new trial to be used as a vehicle "to examine anew the original trial for the detection of errors which might have been [but were not] raised by exceptions taken at the trial." *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24 (1923). *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973). The basis for these rules is that the party's failure to raise the particular issue at trial, or to take the necessary steps to save and perfect his right of appeal thereon, amounts to a waiver of the issue. Nevertheless, we have also held that, if the strict application of these rules would give rise to "a substantial risk of a miscarriage of justice," we may consider the alleged trial error notwithstanding the failure to lay the groundwork for appellate review. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We believe that this is a proper case for the application of the rule of the *Freeman* case. Inquiry into the defendant's claim of incompetence should not be easily foreclosed on the ground of waiver, since "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate* v. *Robinson*, 383 U.S. 375, 384 (1966). In his dissenting opinion in the same case, Mr. Justice Harlan said, at 388, that if there were error at the trial level on the question of the defendant's competence to stand trial, "such an error is not 'waived' by failure to raise it and that it may entitle the defendant to a new trial without further proof.

Waiver is not an apposite concept where we premise a defendant so deranged that he cannot oversee his lawyers."

4. We noted in part 2 of this opinion that the test of the defendant's competence to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky* v. *United States, supra* at 402. *Commonwealth* v. *Vailes, supra* at 524. We now consider the question whether, in the circumstances of this case, the judge should have acted on his own initiative to hold an evidentiary hearing and make a determination of the issue of the defendant's competence, regardless of the fact that the issue was not raised by the defendant or his counsel. In *Commonwealth* v. *Vailes, supra* at 524, we said: "In those situations where there exists doubt as to whether the defendant satisfies this test [of competence], the judge must, on his own initiative, conduct a full hearing on the issue. *Pate* v. *Robinson,* 383 U.S. 375 [1966]. This doubt which necessitates a hearing has been more fully described as 'a substantial question of possible doubt.' *Rhay* v. *White,* 385 F.2d 883, 886 [9th Cir. 1967]." In the *Rhay* case the court said, at 886, that "the question here is not why counsel failed to request a competency hearing or why the court failed to hold one on its own initiative, but whether, no less on hindsight than by foresight, there were elements of such indication in the situation as, if proper notice had been taken of them, could present a substantial question of possible doubt as to [the defendant's] competency to stand trial."

We review the relevant information and evidence available to the judge both before and during the trial in order to determine whether it was sufficient to raise a substantial doubt as to the defendant's competence to stand trial. If it were, the judge was required to hold an evidentiary hearing on that question. The available information included the judge's observations of the defendant's demeanor and behavior at the trial, reports of psychiatric examinations of the defendant, statements to the judge about the defendant's

conduct and mental condition, and the testimony of expert witnesses at the trial about the defendant's conduct and condition. We review that information known to the judge in this regard.

After the defendant was arrested on December 14, 1971, he was held in custody in the jail at Billerica. On January 10, 1972, on an order of a District Court judge, he was transferred to Bridgewater State Hospital (Bridgewater), for observation pursuant to G. L. c. 123, § 18 (a). The acting medical director of the hospital reported back to the court about a month later that the defendant was competent to stand trial, but diagnosed him as a "Schizophrenic Reaction, Paranoid Type," and recommended that he remain at Bridgewater for treatment until his trial. The report stated that it was the defendant's third admission to the hospital, and that the defendant claimed he had recently been found not guilty by reason of insanity on various charges brought against him in the State of New York. At his own request the defendant was returned to Billerica in March, 1972.

The trial began on May 7, 1973, and the defendant asserted a plea of insanity as his only defense. The defense counsel, in response to questioning from the judge, stated that the defendant was unable to cooperate in his defense since he had no recollection of committing the crime. The attorney did indicate, however, that he felt that the defendant understood the charges against him and was competent to stand trial. The judge himself then questioned the defendant on the issue of his waiver of a trial by jury, and found the responses to be rational and indicative of an understanding of the nature of the proceedings and the roles of the participants. At various other points throughout the trial the judge renewed this questioning of the defendant and his counsel, and received responses that he apparently considered to be consistent with a belief that the defendant was competent.

The defendant's first witness was Dr. Julie Redstone, a clinical psychologist,[1] who testified that on October 12, 1972, she saw the defendant and gave him three psychological tests. On the basis of these tests, she concluded that the defendant was "functioning in a psychotic way," that his condition was long-standing and chronic, and that he had a "paranoid state." She stated that in her opinion the defendant was "the victim of a massive delusional system which interferes with his experiencing of events in a realistic way, the way that you and I would typically see them; that he uses poor judgment at times because of this distortion of events, this distorted perception; that he is impulsive at times; and that his impulsivity could, in terms of his behavior, cause out-of-control behavior."

The testimony of Dr. Paul Redstone, the court-appointed psychiatrist who was the second and final defense witness, was in substantial agreement with that of Dr. Julie Redstone.[2] He conducted interviews with the defendant in September and October of 1972. He diagnosed the defendant as suffering from chronic schizophrenia, paranoid type, that likely dated from 1936 when he was fifteen. According to Dr. Redstone the defendant believed that the "rich people" had been after him since 1936 because in that year "the poor people had given him the secret of longevity, and that secret the rich people were trying to get back." The defendant also believed that the rich people had stolen $40,000,000 from the poor people, a belief that apparently served as a justification to him for robbing banks. Finally, Dr. Redstone reported that the defendant said that he heard voices that directed him in his activities.

---

[1] The prosecution's case in chief consisted primarily of the testimony of employees of the bank that was robbed, and of police officers involved in the arrest and initial incarceration of the defendant. A statement of an accomplice of the defendant, whose case was disposed of in a separate proceeding, was also admitted in evidence.

[2] Dr. Julie Redstone is the wife of Dr. Paul Redstone. However, he testified that their conclusions were arrived at independently.

On the basis of these observations and diagnoses, Dr. Redstone concluded that, at the time of the bank robbery, the defendant was without the substantial capacity to appreciate the wrongfulness of his acts. As a result of questioning by the judge, Dr. Redstone expressed doubt whether the defendant was competent to stand trial. He felt that the defendant's delusions might significantly interfere with his capacity to cooperate with his counsel. Although the witness indicated that he believed that the defendant possessed a factual understanding of the proceedings against him, the witness did not respond to a question concerning the defendant's rational understanding of those proceedings.

The defendant's long history of treatment in mental hospitals was manifested by extensive medical and psychiatric records that were admitted in evidence during Dr. Redstone's testimony. The records indicated that, since 1936, the defendant had been hospitalized frequently at Bridgewater State Hospital, Medfield State Hospital, and Boston Psychopathic Hospital. One of these hospitalizations, in 1936, resulted from the defendant's random firing of a gun while walking along Tremont Street in downtown Boston. Dr. Redstone stated that these records, as well as others he had seen from Kansas and New York, included evaluations of the defendant that were similar to his own, and indicated that the delusions that the defendant presently suffered from had existed for at least twenty years.[3]

It is our conclusion that the facts shown on this record were sufficient to raise a substantial question of possible doubt of the defendant's competence, and indicated a need

---

[3] In support of his insanity plea, the defendant also entered in evidence a letter from himself to his counsel which gave a bizarre narrative of the bank robbery and the events leading up to it, and was consistent with the delusions described by the psychiatrist.

In an attempt to rebut the evidence of the defendant's serious mental problems, the Commonwealth called the deputy master of the jail section of Billerica who testified that the defendant had behaved normally during his seventeen months at the jail, and had become a member of a prison advisory board.

for further inquiry to determine fitness to proceed. *Drope* v. *Missouri*, 420 U.S. 162, 180 (1975). We recognize that the defendant's demeanor at trial and response to questioning by the judge were apparently not unusual. However, while this is certainly relevant to a decision on the merits of the competency issue, it cannot be treated as dispositive of the question whether a hearing should be held on that issue. *Pate* v. *Robinson*, 383 U.S. 375, 386 (1966). Whatever the value of the observations of the defendant's demeanor, the evidence of his long history of psychological problems and irrational and bizarre behavior, the testimony of the psychologist and the psychiatrist as to his current problems, and the psychiatrist's testimony indicating a question whether the severe delusions suffered by the defendant prevented his effective cooperation with counsel clearly raised a substantial doubt as to his competence to stand trial. Although the Bridgewater report of February, 1972, included an opinion that the defendant was competent, the diagnosis of schizophrenia, and the recommendation that the defendant remain at Bridgewater until trial, certainly indicated that the medical staff possessed serious reservations regarding his mental health. It should also be noted that the significance of the report is in part undermined by the facts that (a) it was based on an examination of the defendant made fifteen months before the commencement of the trial, and (b) during fourteen of those months he was incarcerated at the house of correction, an incarceration that was contrary to the recommendations of the Bridgewater staff and which may have resulted in further problems for the defendant. See *Commonwealth* v. *Kostka*, 370 Mass. at 522; *Drope* v. *Missouri, supra* at 172-173 n.9, 181.

Our conclusion is consistent with decisions of the Supreme Court of the United States and with earlier decisions of this court. In *Pate* v. *Robinson, supra,* where facts were very similar to those of this case, the Supreme Court reversed a conviction for failure to hold a competency hearing, indicating that, on the record before it, "a history of irrational behavior . . . was sufficient to require further

inquiry notwithstanding [the defendant's] demeanor at trial and the stipulated opinion of a psychiatrist that [the defendant] knew the nature of the charges against him and could cooperate with counsel when the psychiatrist examined him two or three months before." *Drope* v. *Missouri, supra* at 172-173 n.9. The Court made a similar disposition in *Drope,* where the evidence of irrational behavior prior to trial was not as strong as that in *Pate* v. *Robinson,* but where the defendant attempted to commit suicide while the trial was proceeding. *Drope* v. *Missouri, supra* at 180-181. In *Commonwealth* v. *Vailes,* 360 Mass. 522 (1971), where we held that an evidentiary hearing was not required, there was no evidence of a long history of mental problems, but merely "the display [in the court room] of a few mannerisms which are consistent with no more than nervousness, diffidence, boredom or dissembling." *Id.* at 525.[4]

5. It appears from the record that after the close of the evidence at the trial the judge took some steps which indicated his concern whether the defendant was competent to stand trial. However, we do not believe that the postconviction action was sufficient to overcome the fact that, despite the presence of information and evidence which raised a substantial question of possible doubt about the defendant's competence, he was put to trial without a prior evidentiary hearing and decision on that issue. We review some of these postconviction developments. In doing so we recognize that some of the developments may not be relevant to the defendant's competence as of the time he was tried, but they update the background facts relating to that issue.

(a) On May 11, 1973, when the judge found the defendant guilty, he filed a document entitled, "Findings of Fact and Rulings of Law," in which he stated that "[a]lthough no issue has been raised by the defendant or his counsel as to

_____

[4] It appears that the Commonwealth relies in part on G. L. c. 123, § 15. This section, however, merely prescribes the procedure to be followed when incompetency is suspected. It does not, and cannot, restrict the constitutional right of a defendant to an evidentiary hearing.

the competency of the defendant to stand trial, the court nevertheless, on its own motion, is considering that matter and is making certain findings." The judge then properly recognized the test of competency as set forth in *Dusky* v. *United States*, 362 U.S. 402 (1960), and continued: "I find as a fact that under the foregoing standard, the defendant, during the entire trial before me, has been competent to stand trial." He then rejected the defense of insanity and found the defendant guilty. However, instead of sentencing the defendant pursuant to his conviction, the judge ordered the defendant committed to the Bridgewater State Hospital under G. L. c. 123, § 15(e), "to aid the court in sentencing." The record fails to disclose that, at any time before making the finding that the defendant was competent to stand trial, the judge had either stated or indicated that he was conducting a hearing on that issue, or that he was giving the parties the opportunity to present evidence thereon.

(b) The defendant's commitment to the Bridgewater State Hospital on May 11, 1973, resulted in a report from the assistant medical director of that institution, dated June 26, 1973, and a diagnostic staff report dated June 25, 1973, that stated in part that the defendant "is actively mentally ill and in need of psychiatric hospitalization, . . . is not competent to serve a sentence in a penal institution, . . . should [be] committed to a mental institution for further intensive psychiatric treatment rather than be incarcerated in a penal institution, . . . [and] is incompetent to stand trial at this time." After receiving that report, the judge informed counsel on July 11, 1973, that, because of the psychiatric opinions contained therein, he would initiate a hearing on the defendant's competence to stand trial. He held such a hearing on September 17, 1973, at which he received testimony from the assistant medical director of the institution. At the close of the hearing the judge reaffirmed his prior finding of May 11, 1973, that the defendant was competent to stand trial and that he had the required mental capacity to commit the crimes of which he had been convicted. The judge found further that, although the defendant was competent

to stand trial, "there is no doubt that [he] is mentally ill." He then imposed sentences on the defendant and ordered the clerk to notify the prison authorities of the defendant's history of mental illness.

(c) On December 19, 1973, the defendant was committed to the Bridgewater State Hospital by a District Court judge after a hearing held pursuant to G. L. c. 123, § 18. It was while he was at the hospital under that commitment that the defendant on February 12, 1974, filed his pro se motion for a new trial. The defendant was still in the hospital under the same commitment on June 20, 1975, when his counsel filed the second motion for a new trial. It appears from information furnished by that counsel to the court that the defendant was released from the hospital commitment about January 1, 1977, to serve his original sentence at the Massachusetts Correctional Institution at Bridgewater.

(d) Although the defendant's two motions for a new trial alleged several grounds therefor, they were ultimately argued on the single ground, common to both motions, that it was error to put the defendant to trial without first holding a hearing on his competence to stand trial. At the hearings on the two motions neither side presented any new evidence, but rather argued on the basis of psychiatric evidence and other information on that subject which had come to the attention of the judge either before or at the time of the hearing of September 17, 1973, when the defendant was sentenced. On August 13, 1975, the judge filed a lengthy memorandum of decision in which he reviewed the proceedings in the case and the evidence on the defendant's mental condition, and concluded "that prior to and during the defendant's trial until the receipt of the Bridgewater report of June 25, 1973 there was no substantial question of possible doubt that required a fuller inquiry or different hearing on the defendant's competence to stand trial and that after receipt of that report the hearing held on September 17, 1973 was legally sufficient."

We disagree with both of those conclusions.

6. The narrow issue before us is not whether the defendant was criminally responsible, sometimes stated to be whether he was sane, when he allegedly participated in the bank robbery. Nor is the issue whether the defendant was competent to stand trial when he was put to trial in May, 1973. It is much more narrow. It is whether, at any time prior to the date the defendant was found guilty on May 11, 1973, there was "a substantial question of possible doubt" about the defendant's competency to stand trial. *Rhay* v. *White*, 385 F.2d 883, 886 (9th Cir. 1967). *Commonwealth v. Vailes*, 360 Mass. 522 (1971). We hold that there was such evidence, and that it was error to permit the defendant to waive his right to trial by jury and then to proceed with the trial through the point where he was found guilty without holding a hearing on the question of his competence to stand trial.

We are not persuaded that in the circumstances of this case the prejudice caused to the defendant by the failure to hold a competency hearing before conviction could be or was nullified by the purported finding of competence at the time of sentencing four months after the conviction, or by the affirmance of this finding of competence two years after the sentence in connection with the denial of the defendant's motions for new trial. The subject of inquiry at a competency hearing is the condition of the defendant at the time of trial; therefore a retrospective determination creates difficulties. *Pate* v. *Robinson*, 383 U.S. at 387. 'The [fact finder] would not be able to observe the subject of [its] inquiry, and expert witnesses would have to testify solely from information contained in the printed record." *Id.* See *Drope* v. *Missouri*, 420 U.S. 162, 183 (1975); *Dusky* v. *United States*, 362 U.S. 402, 403 (1960).

7. In each case the defendant's waiver of trial by jury is set aside, the judgment is reversed, and the finding is set aside. If the Commonwealth elects to bring the defendant to trial again on these indictments, there must first be a evidentiary hearing and decision on the issue of the defendant's competence to stand trial.

*So ordered.*