## COMMONWEALTH vs. STEPHEN W. ROBBINS.

Barnstable. March 9, 2000. - May 11, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Criminal,* Plea, New trial, Competency to stand trial, Waiver, Instructions to jury. *Constitutional Law,* Plea, Fair trial. *Waiver. Mental Impairment. Homicide.*

Nothing in the record of a criminal proceeding supported the defendant's assertion in support of his motion for a new trial that he was not competent at the time he pleaded guilty to an indictment for murder in the first degree, and the motion judge's finding that the defendant was competent when he proffered the plea was properly based on the record of the plea, certain doctors' reports, and the judge's recollections of his observations at the time [444-447]; further, nothing in the record created a "substantial question of possible doubt" as to the defendant's competence [447-449].

The record of a plea proceeding demonstrated that the defendant's plea of guilty to a charge of murder in the first degree was made with knowledge of the nature of the charges against him and that the defendant's plea was knowing and voluntary. [449-452]

INDICTMENT found and returned in the Superior Court Department on December 14, 1993.

A guilty plea was accepted by *Gerald F. O'Neill, Jr.,* J., and a motion for a new trial, filed on October 23, 1996, was heard by him.

*James H. Budreau* for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. On February 21, 1995, the defendant, Stephen W. Robbins, pleaded guilty to murder in the first degree. On October 23, 1996, the defendant filed a motion for a new trial, seeking to vacate his guilty plea. The trial judge heard and denied the motion. The defendant then sought leave from a single justice of this court to appeal from the judge's ruling. See *Dickerson* v. *Attorney Gen.,* 396 Mass. 740, 744 (1986). See also G. L. c. 278, § 33E. The single justice concluded that

G. L. c. 278, § 33E, was inapplicable in this situation, and that the defendant was therefore free to proceed with his appeal without first obtaining so-called "gatekeeper" permission.[1] The single justice directed that the appeal be heard in this court. On appeal, the defendant argues that his conviction should be vacated because (1) he was not competent to plead guilty to murder in the first degree; (2) the judge erred in not ordering, sua sponte, a competency hearing; and (3) his plea was involuntary because he did not understand the charges against him. We affirm the denial of the defendant's motion for a new trial.

1. *Facts.* We summarize the facts admitted by the defendant at his plea colloquy. The defendant married the victim in 1988. In the years preceding the murder, there was a history of physical and emotional abuse of the victim by the defendant. In 1993, the victim decided to leave the marital home to live with her parents. Because the defendant and the victim had raised children together, the two were in communication with one another.

At some point, the victim became involved with another man. Approximately one week before the murder, the victim decided to make a "clean break" from the defendant by moving in with that man. The defendant, on the other hand, was determined to win the victim back and, to that end, stopped drinking.

On the night of the murder, the victim and the defendant went shopping, rented a movie, and had dinner together. The victim indicated to the defendant that her decision to leave him was a firm decision. She also indicated that she planned to take custody of the children. That night, the victim fell asleep on the defendant's couch.

For some period of time, the defendant watched her sleep.[2] He then stood up, went to a closet, and took out a baseball bat.

---

[1] We agree with the single justice that G. L. c. 278, § 33E, does not apply where an individual pleads guilty to murder in the first degree, then subsequently appeals from the denial of a motion to withdraw the plea. The "gatekeeper" provision comes into play only after a defendant, in a direct appeal, has had the benefit of the comprehensive review that the statute provides. G. L. c. 278, § 33E ("If any motion is filed in the superior court *after rescript*, no appeal shall lie . . . unless the appeal is allowed by a single justice . . ." [emphasis added]).

[2] As discussed, *infra*, there is some dispute as to whether the defendant was drinking during this time.

He also took out a recently purchased hunting knife. The defendant bludgeoned the victim with the bat, delivering three to five blows to her head. Then, he took the hunting knife and stabbed her in the neck.

After the murder, the defendant took the children out of his house and drove them to a house that he had visited in his work with a pest control company. He broke into that house and put the children to bed. During the night, he wrote several notes to the children and others. The next morning, the defendant turned himself in to the police.

The defendant was indicted for the murder of his wife. After a jury was empanelled, but before the jurors were sworn, the defendant indicated that he wished to plead guilty to murder in the first degree. After a colloquy, the judge accepted the defendant's guilty plea.

2. *Standard of review.* "Once accepted, '[a] plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. . . . More is not required; the court has nothing to do but give judgment and sentence.' " *Commonwealth* v. *DeMarco*, 387 Mass. 481, 481 (1982), and cases cited. Therefore, "[a] postsentence motion to withdraw a plea is a request for postconviction relief[,]" and "[p]ostconviction motions to withdraw pleas are treated as motions for a new trial." *Id.* 481-482, and cases cited. "A motion for a new trial is addressed to the sound discretion of the trial judge, and the judge's disposition of the motion will not be reversed unless" "it appears that justice may not have been done." *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995), quoting Mass. R. Crim. P. 30 (b), 378 Mass 900 (1979). See *Commonwealth* v. *DeMarco, supra* at 482.

3. *Defendant's competence.* "When a criminal defendant pleads guilty, he waives his right to be convicted by proof beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 364 (1970), his Fifth Amendment privilege against self-incrimination, his right to stand trial by jury, and his right to confront his accusers." *Commonwealth* v. *DelVerde*, 398 Mass. 288, 292 (1986), citing *Boykin* v. *Alabama*, 395 U.S. 238, 243 (1969). "Because a plea of guilty involves these constitutional rights, the plea is valid only when the defendant offers it voluntarily, with sufficient awareness of the relevant circum-stances, *Brady* v. *United States*, 397 U.S. 742, 748-749 (1970), and with the advice of competent counsel." *DelVerde, supra* at

292-293, quoting *Commonwealth* v. *Fernandes*, 390 Mass. 714, 715-716 (1984).

Because a defendant's waiver of these rights must be knowing and voluntary, a defendant must possess a certain degree of competence to plead guilty. "The test of competence to plead is similar to that for standing trial." *Russin, supra* at 316, quoting *Commonwealth* v. *Blackstone*, 19 Mass. App. Ct. 209, 211 (1985), and *Commonwealth* v. *Leate*, 367 Mass. 689, 696 (1975). "The standard for determining competency to stand trial is 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.' " *Russin, supra* at 317, quoting *Dusky* v. *United States*, 362 U.S. 402, 402 (1960). See *Commonwealth* v. *Lyons*, 426 Mass. 466, 469 (1998). "When reviewing the judge's finding of competency, we give substantial deference to his findings of fact." *Id.* at 466, citing *Commonwealth* v. *Prater*, 420 Mass. 569, 574 (1995).

The defendant claims that the judge's determination that he was competent to plead was "against the weight of the evidence." The evidence presented by the defendant consists, essentially, of two affidavits — one by the defendant and one by his mother — attached to the defendant's motion for a new trial. In his affidavit, the defendant makes the following statement: "I believe that I was suffering from a mental condition at the time of the plea which significantly impaired my judgment and my ability to make a reasoned decision." The defendant states that he was "extremely depressed," possibly due to a head injury he suffered as a child or to his previous drug and alcohol abuse. The defendant's mother submitted an affidavit as well, in which she states that she "could easily detect that he was off his medication [Prozac] on that day." According to her affidavit, the defendant "was a different person off the medication. He was extremely depressed and anxious. He was twitching, his eyes were darting back and forth, and his speech was accelerated."

There is nothing in the record before us to substantiate the defendant's ex post facto assertion that he was not competent to plead guilty. Nor is there any indication that his demeanor at the plea colloquy was anything but appropriate and rational. In the months prior to his plea, the defendant was examined by at

least three psychologists.[3] Dr. Wesley E. Profit noted that the defendant "did not suffer from any unusual childhood diseases";[4] "answered questions without hesitation or apparent difficulty"; and was "alert and oriented." Dr. Profit concluded that his "examination has not revealed any material or evidence which would rise to the level of clinical significance when considering whether . . . [the defendant] has a rational as well as factual understanding of the judicial proceedings against him." Dr. Stephen DeLisi noted that the defendant had stopped taking Prozac that had been prescribed while he was in prison. According to Dr. DeLisi, the defendant did "not believe that the Prozac was helping him . . . . He has consistently denied any symptoms of depression and has not been noted to be in any acute distress." Dr. Marc A. Whaley, who was hired by the defendant, concluded that the defendant's condition "does not meet the standard of a major mental illness."[5]

The defendant's trial counsel also indicated that the defendant was competent. At the plea colloquy, defense counsel gave the following report to the judge: "I have never had any question about his [the defendant's] competency. I think he thoroughly understands the issues, I think he knows what he's giving up . . . ."

"[I]n reviewing the judge's determination of competency, we must give weight to the judge's opportunity to observe the defendant's demeanor during the trial and the plea hearing." *Russin, supra* at 317, citing *Commonwealth* v. *DeMinico*, 408 Mass. 230, 236 (1990). The judge asked the defendant if he was "currently affected by any mental illness." The defendant answered, "No, I'm not." Immediately after the plea was taken, the judge noted that the defendant was responsive and alert and did not appear to be under the influence of any drugs. The judge was well aware that guilty pleas to murder in the first degree are unusual and observed that he "wouldn't have touched it [the plea] with a [ten]-foot pole if I had any question in my mind. [The defendant] was responsive, intelligent and appeared

---

[3]Some of the papers before us make reference to a fourth psychologist. There is no report from a fourth psychologist among the papers submitted to us.

[4]Dr. Stephen DeLisi noted that the defendant had suffered "two head injuries during his childhood . . . but there were no apparent neuropsychological problems."

[5]Dr. Whaley's examination focused on the assessment of the defendant's criminal responsibility and diminished capacity.

to me to be sincere in whatever would motivate a person to do this; i.e., the only possible motivation is to spare the victim's family from any further trauma . . . ."

In his memorandum denying the defendant's motion for a new trial, the judge wrote that he "remembers this colloquy and the defendant's appearance and conduct . . . . [T]he defendant appeared rational, normal and as much in control of his thoughts and emotions as any person in the same circumstances."

The judge's determination was based on "observations of the defendant's demeanor and behavior . . . , reports of psychiatric examinations of the defendant, [and] statements to the judge about the defendant's conduct and mental condition." *Commonwealth* v. *Crowley*, 393 Mass. 393, 399 (1984). See *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 266 (1995), citing *Commonwealth* v. *Hill*, 375 Mass. 50, 54-55 (1978) ("The judge based her findings of competency on relevant factors: her observations, the psychiatric testimony . . . , the original competency evaluation . . . and her own colloquies with the defendant"). "[W]e defer to the judge's finding . . . . The evidence warranted the finding that the defendant was able to understand the nature and object of the proceedings against him. . . ." *Commonwealth* v. *L'Abbe*, *supra* at 267.

4. *Competency hearing.* "A competency hearing must be held 'where there exists doubt as to whether the defendant satisfies [the *Dusky*] test.' " *Commonwealth* v. *Crowley*, 393 Mass. 393, 398-399 (1984), citing *Dusky* v. *United States*, 362 U.S. 402 (1960); *Commonwealth* v. *Kostka*, 370 Mass. 516, 522 (1976); *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). "The judge, moreover, must raise the question sua sponte if sufficient reason exists to doubt the defendant's competency. *Pate* v. *Robinson*, 383 U.S. 375, 385 (1966). *Commonwealth* v. *Hill*, 375 Mass. 50, 54 (1978). The judge must hold a competency hearing if there exists 'a substantial question of possible doubt' as to whether the defendant is competent to stand trial. *Hill*, *supra*, quoting *Rhay* v. *White*, 385 F.2d 883, 886 (9th Cir. 1967). Failure to make an inquiry into competency in these circumstances deprives the defendant of his constitutional right to a fair trial. *Pate* v. *Robinson*, *supra* at 385. *Commonwealth* v. *Vailes*, *supra*." *Commonwealth* v. *Crowley*, *supra*.

The defendant argues that the judge erred in not ordering, sua sponte, a hearing on the question of the defendant's competence to plead guilty. According to the defendant, the fact that the

three examining psychologists speculated that the defendant might suffer from mood or personality disorders,[6] combined with the defendant's history of substance abuse and "bizarre and deviant behavior,"[7] should have alerted the judge to the need to hold a hearing on the defendant's competence to stand trial.

It is not clear from the record whether any or all of this information was available to the judge before the plea colloquy. Because it does not alter our conclusion that the judge acted appropriately, we proceed, arguendo, as if all the information cited by the defendant were available to the judge.

The defendant's argument confuses the presence of mental illness with lack of competence to stand trial. The proper question for the judge to consider when determining whether to hold a competency hearing is not whether the defendant has a mental illness or has ever acted oddly in the past. The proper question is whether the judge has doubts about the defendant's "present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether [the defendant] has a rational as well as factual understanding of the proceedings against him." *Commonwealth* v. *Russin*, 420 Mass. 309, 317 (1995), quoting *Dusky* v. *United States*, *supra* at 402. See *Commonwealth* v. *Lyons*, 426 Mass. 466, 469 (1998). Past history of mental illness and abnormal behavior are factors for the judge to consider, but are not dispositive on this question.

A defendant may have a mental illness or condition, but still be competent under the *Dusky* test. Nothing in the record created a "substantial question of possible doubt" as to whether the defendant was competent to stand trial. *Commonwealth* v. *Hill*, *supra* at 54, quoting *Rhay* v. *White*, *supra* at 886. According to the judge's statements, made both immediately after the plea colloquy and in his memorandum denying the defendant's motion for a new trial, the defendant behaved rationally and was "responsive" and "intelligent." The defendant's trial

---

[6]Dr. Profit concluded that the defendant might suffer from "possible [c]yclothymic [d]isorder," which involves mood disturbances that are not severe, pervasive, or durable enough to warrant classification as "major depressive" or "manic" episodes. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994). Dr. Profit did not believe the disorder would affect the defendant's ability to understand the legal proceedings against him. Dr. DeLisi and Dr. Whaley concluded that there was no evidence of a major mental illness.

[7]The defendant had a history of torturing and killing small animals.

counsel, who, the record suggests, spent a significant amount of time with the defendant, had no doubts as to the defendant's ability to understand the proceedings and assist his attorney. The defendant himself answered the judge's questions appropriately and indicated that he understood the proceedings and was satisfied with his counsel's representation. In short, there was nothing to alert the judge to the need for a competency hearing, and the decision not to order a hearing sua sponte was not error.[8]

5. *Knowing and voluntary requirement.* "As a general proposition of constitutional law, a guilty plea may be withdrawn or nullified if it does not appear affirmatively that the defendant entered the plea freely and voluntarily. *Boykin* v. *Alabama*, 395 U.S. 238, 242-243 (1969). See *Brady* v. *United States*, 397 U.S. 742, 748 (1970); *Commonwealth* v. *Foster*, 368 Mass. 100, 106 (1975). Rule 12 (c) (3) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 866 (1979), requires that a defendant be informed on the record of the three constitutional rights which are waived by a guilty plea: the right to trial, the right to confront one's accusers, and the privilege against self-incrimination. See *Boykin* v. *Alabama, supra* at 243; *Commonwealth* v. *Lewis*, 399 Mass. 761, 764 (1987). Moreover, the plea record must demonstrate either that the defendant was advised of the elements of the offense or that he admitted facts constituting the unexplained elements. See *Henderson* v. *Morgan*, 426 U.S. 637, 646 (1976); *Commonwealth* v. *Colantoni*, 396 Mass. 672, 678-679 (1986). Finally, the plea record must demonstrate that the defendant pleaded guilty voluntarily and not in response to threats or undue pressure. See *Commonwealth* v. *Foster, supra* at 107." *Commonwealth* v. *Lopez*, 426 Mass. 657, 660 (1998).

The record indicates, and the defendant does not claim otherwise, that the defendant was fully informed of the rights he waived by pleading guilty. Likewise, there is no indication or claim of coercion or pressure to plead guilty.[9] However, the defendant does assert that he "did not understand what was

___

[8]We reject the defendant's argument that the offer to plead guilty to murder in the first degree, by itself, suggests a defendant's incompetence. The defendant's apparent desire to spare his family and the victim's family and children the details that would be disclosed during a trial is a rational reason for his plea.

[9]Defense counsel made a point of noting that the defendant's guilty plea was against counsel's advice. Defense counsel explained to the judge that he had told the defendant that there was no legally significant advantage to

required to prove first degree murder." He also claims that he did not understand the difference between murder in the first degree, murder in the second degree, and manslaughter; the difference between premeditation and murder with extreme atrocity and cruelty; or that mental illness or intoxication could affect his culpability.

The requirement that the defendant's plea to a particular crime be knowing may be satisfied in a number of ways. *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343 (1978), cert. denied, 439 U.S. 1120 (1979). A defendant may make "a voluntary admission" that his act and mental state conformed with the elements of the crime. *Id.* Or, a defendant's knowledge of the charges against him may be established via "(1) an explanation of the essential elements by the judge at the guilty plea hearing; (2) a representation that counsel has explained to the defendant the elements he admits by his plea; (3) defendant's statements admitting to facts constituting the unexplained element or stipulations to such facts." (Footnote omitted.) *Id.* at 343-344.[10]

Having reviewed the transcript of the plea colloquy, we are satisfied the defendant's plea of guilty was made with knowledge of the nature of the charges against him. The judge defined murder and enumerated the elements of murder in the first degree. He did not err in his explanation. Cf. *Commonwealth* v. *Nikas, post* 453 (2000). The judge then asked the defendant whether he understood the elements and whether his counsel had explained those elements to him.[11] The defendant answered affirmatively. The judge also inquired of defense

---

pleading guilty to murder in the first degree but that the defendant was "considering reasons other than legal reasons."

[10]Because we determine that the defendant understood the nature of the charges against him, we do not address the defendant's argument that he never admitted "to facts constituting the unexplained element." *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343 (1978), cert. denied, 439 U.S. 1120 (1979).

[11]THE JUDGE: "Do you understand this indictment against you, sir?"

THE DEFENDANT: "Yes, I do."

THE JUDGE: "Has your attorney . . . explained to you the essential elements of this offense?"

THE DEFENDANT: "Yes."

THE JUDGE: "Murder in the first degree is punishable by life in prison without any possibility of parole. Do you understand that, sir?"

counsel whether he had "explain[ed] these elements" to the defendant. Defense counsel answered, "Very thoroughly." In addition, defense counsel told the judge that he had spent "several hours" going over proposed jury instructions with the defendant. See *Commonwealth* v. *McGuirk, supra* at 344 n.7, citing *United States* v. *Coronado,* 554 F.2d 166, 172 (5th Cir.), cert. denied, 434 U.S. 870 (1977) ("[t]he type of statements used in jury charges may be helpful in conveying the requisite information"). We have reviewed the instructions, which adequately explain premeditation, malice, and the differences between murder in the first degree, murder in the second degree, and manslaughter.[12]

We have held that an averment that counsel has given a satisfactory explanation of the elements of the crime to the defendant may be used to demonstrate that a defendant's plea was knowing and voluntary. See *Commonwealth* v. *Colantoni,* 396 Mass. 672, 679 (1986); *Commonwealth* v. *McGuirk, supra.*

---

THE DEFENDANT: "Yes."

THE JUDGE: "The essential elements of murder are an unlawful killing with malice aforethought. Has your attorney explained to you these legal elements?"

THE DEFENDANT: "Yes."

THE JUDGE: "Murder in the first degree is an unlawful killing with malice aforethought, committed with either deliberate premeditation or extreme atrocity and cruelty. Has your counsel explained the elements of first degree murder to you?"

THE DEFENDANT: "Yes."

THE JUDGE: "Did you understand them?"

THE DEFENDANT: "Yes."

THE JUDGE: "Do you have any questions about those essential elements at this time?"

THE DEFENDANT: "No."

[12]In addition, the defendant made a special point of indicating that he wished to plead guilty to premeditated murder rather than murder in the first degree with extreme atrocity or cruelty. Defense counsel informed the judge that he had explained to the defendant that the case could have been submitted to the jurors on either theory.

Where, as here, counsel's averment is supplemented with questioning by the judge and a copy of a proposed jury instruction that counsel reviewed at length with the defendant, "the judge was entitled to, and apparently did disbelieve [the defendant], finding . . . that '[t]he transcript record of the . . . hearings . . . shows that . . . [he] then said that . . . [he] did then understand.' " *Commonwealth* v. *Leate*, 367 Mass. 689, 695-696 (1975).[13]

Similar reasoning persuades us that the defendant's understanding of impaired mental capacity and criminal responsibility sufficed to support a knowing and voluntary guilty plea. The defendant's counsel told the judge that the defendant had read "many of the cases" on these topics. Defense counsel also told the judge that the defendant "has read the report of our psychiatrist, sees how that related to that defense, and . . . grasps it well." The judge, concerned about the issue, and cognizant of the unusual nature of a guilty plea to murder in the first degree, made further inquiry "out of an excess or abundance of caution." Defense counsel indicated that, although there was some evidence of the defendant's intoxication on the night of the murder, the Commonwealth had "rather strong . . . evidence" to the contrary. He also reiterated that he had reviewed the possible "defenses" with the defendant, and that the defendant understood and was aware of those defenses.

6. *Conclusion.* The record supports the judge's determination that the defendant was competent when he made his plea. The record also indicates that the defendant's plea was knowing and voluntary. There is nothing to suggest that "justice may not have been done." *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995), quoting Mass. R. Crim. P. 30 (b), 378 Mass 900 (1979). See *Commonwealth* v. *DeMarco*, *supra* at 482.

*Judgment affirmed.*

---

[13]We decline to accept the defendant's invitation to impose more stringent requirements for pleas to murder in the first degree. However, because of the seriousness of the crime and penalty involved in this case, we reiterate that, although an averment by counsel that he has explained the elements "may be acceptable, this is not the best, nor the most reliable, mechanism by which the defendant's plea may be shown to be free, voluntary, and intelligent." *Commonwealth* v. *Colantoni*, 396 Mass. 672, 679 n.5 (1986).