COMMONWEALTH *vs.* LUIS M. LOPEZ.

Hampden. October 6, 2006. - November 7, 2006.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & CORDY, JJ.

*Practice, Criminal,* Plea, Waiver, Capital case. *Due Process of Law,* Plea. *Constitutional Law,* Waiver of constitutional rights.

The judge at a criminal trial did not err in not conducting a plea colloquy where the defendant plainly exercised his right to a trial by jury, and there was no merit to the defendant's contention that his trial testimony was so inculpatory that it rendered his trial, in effect, an elongated guilty plea. [628-630]

INDICTMENTS found and returned in the Superior Court Department on September 3, 1998.

The cases were tried before *C. Brian McDonald,* J., and a motion for a new trial, filed on April 16, 2004, was heard by him.

*Michael D. Cutler* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, Luis M. Lopez, was convicted by a jury of murder in the first degree on a theory of felony-murder, armed robbery, and home invasion.[1] He appeals from these convictions and from the denial of his subsequent motion for a new trial. Represented by new counsel, his sole contention on appeal from both the convictions and the denial of the motion is that his testimony was so inculpatory that it rendered the trial, in effect, an elongated guilty plea, and that as a result the judge should have conducted a plea colloquy. We affirm the convictions and the order denying the motion for a new trial. Pursuant to G. L. c. 278, § 33E, we have reviewed the entire record and

[1] The jury did not find the defendant guilty by reason of premeditation. The judge later determined that the home invasion conviction "merged" with the conviction of felony-murder and dismissed that count. See *Commonwealth* v. *Gunter,* 427 Mass. 259, 275-276 (1998).

decline to exercise our power to order a new trial or to direct the entry of a verdict of a lesser degree of guilt on the murder conviction.

*Background.* We summarize the facts the jury could permissibly have found. On July 22, 1998, the victim, Luis Legarreta, and others from a "drug spot" located at 213 Chestnut Street in Holyoke, "talk[ed] shit" to Glenn Jacobs, a friend of the defendant. Afterward, Jacobs, the defendant, and Reynaldo DeJesus decided to arm themselves and "stick up the guys from Chestnut Street." At approximately 2:30 A.M. the following morning, the trio obtained firearms from Leonard Velez-Vega (Velez-Vega) and proceeded to the apartment building that housed the "drug spot." In a hallway, they met Luis Velez (Velez), who was acting as a "lookout" for the victim. To assure that drugs were in the apartment, DeJesus gave Velez money to buy drugs there. When Velez returned with the drugs, the trio brandished their weapons and forced Velez to accompany them upstairs.

At the victim's door, Velez knocked, identified himself, and indicated that he was accompanied by a drug buyer. The door was secured by a chain. When the door opened slightly, the defendant kicked it in, knocking the victim to the floor. The defendant and DeJesus entered with their weapons pointed at the victim, while Jacobs guarded Velez at the door. The victim told the assailants where the drugs were located, and DeJesus hit him on the head with the butt of his handgun. The defendant then told DeJesus, "Shoot that motherfucker in the face. Shoot him."[2] DeJesus fired his weapon at the victim's face. The bullet struck the victim through his upper arm and reentered the left side of his head, resulting in death. The defendant also told DeJesus to shoot Velez, the sentry, but the gun jammed and Velez escaped. Several bags of "crack" cocaine were taken, and the group left, shattering a window in order to flee.

A few days later, after the defendant heard that the police were looking for him, he turned himself in, was arrested, and gave a full statement detailing the attack and inculpating

---

[2]The defendant testified that he did not make this statement. See discussion *infra.*

himself.[3] The defendant was indicted for murder in the first degree, armed robbery, and home invasion. The defendant further cooperated with the investigation of the crime, and his accomplices were indicted and convicted of various offenses.[4] The defendant testified at the trial of Velez-Vega, again inculpating himself, this time by sworn testimony.

In return for the defendant's cooperation, the Commonwealth entered into a cooperation agreement with the defendant, pursuant to which he would plead guilty to murder in the second degree. However, in view of the crimes of which his accomplices were convicted, the defendant eventually wished to plead guilty only to the lesser charge of manslaughter. When the Commonwealth refused to reduce the charge to that extent, the defendant elected to proceed with a jury trial.

The trial spanned five days. The first day was devoted largely to jury selection. During the next three days, the Commonwealth called twelve witnesses and in addition read into the record the defendant's confession to the police and his testimony at the Velez-Vega trial. The defendant's counsel cross-examined most of the witnesses. At the end of the fourth day, the defendant took the stand and provided testimony consistent with the accounts of other witnesses, except he claimed that he "froze" when DeJesus beat and shot the victim, that he did not tell DeJesus to commit these acts, and that he did not take drugs from the body of the victim. The testimony was similar to his earlier statements, giving emphasis to certain details: the nature of his familial relations, including the fact that he was a father and that his mother was in the court room; that he was not "in charge" of the venture; that he was drinking and "high" on narcotics at the relevant times; and that he felt intense remorse for what had transpired.

The defendant requested an instruction on manslaughter, but the judge refused the request. The charge of murder in the first

---

[3]There is no claim that the defendant did not receive the appropriate warnings.

[4]DeJesus pleaded guilty to murder in the second degree and home invasion; Jacobs pleaded guilty to manslaughter; Velez, the lookout, pleaded guilty to armed robbery (the record does not explain why Velez was charged); and, after a trial, Velez-Vega was convicted of accessory before the fact to armed robbery.

degree was submitted to the jury on the theories of premedita-
tion and felony-murder. The predicate offenses for felony-
murder were the armed robbery and home invasion. The judge
instructed the jury that the Commonwealth was proceeding
against the defendant as a principal with respect to some of the
crimes and as a joint venturer with respect to others. On the
verdict slip, the jury found the defendant guilty of felony-
murder, armed robbery, and home invasion. The defendant
thereafter appealed, secured new counsel, and filed a motion for
new trial, arguing that his testimony amounted to a guilty plea
that could not be accepted without a contemporaneous record of
intelligent waiver, i.e., a plea colloquy.[5] The motion judge, who
was also the trial judge, conducted an evidentiary hearing and
denied the motion. The defendant's appeals were consolidated
for review.

*Discussion.* The defendant argues that the judge should have
conducted a plea colloquy with him, sua sponte, to assure his
"understanding that [his] testimony surrendered . . . the
constitutional protections of a trial afforded to persons accused
of crime," and that the failure to do so requires a new trial. We
review to determine whether there was any error and, if so,
whether it caused a substantial likelihood of a miscarriage of
justice. See *Commonwealth* v. *Candelario*, 446 Mass. 847, 859
n.4 (2006); *Commonwealth* v. *Randolph*, 438 Mass. 290, 294 &
n.8 (2002). There was no error.

To be effective, a guilty plea must be knowingly and voluntar-
ily tendered directly from the defendant. *Commonwealth* v.
*Fernandes*, 390 Mass. 714, 715-718 (1984). See *Commonwealth*
v. *Pavao*, 423 Mass. 798, 800, 802 (1996). A defendant must be
informed on the record of the three constitutional rights that are
waived by a guilty plea: the right to trial by jury; the right to
confront one's accusers; and the privilege against self-
incrimination. See *Boykin* v. *Alabama*, 395 U.S. 238, 243
(1969); *Commonwealth* v. *Robbins*, 431 Mass. 442, 449 (2000).

---

[5]The defendant argued other grounds in his motion for a new trial: that
counsel was ineffective in failing adequately to pursue a pretrial motion to
suppress, and that justice was not served because the prosecution did not
permit him to plead guilty to manslaughter. The defendant has abandoned
these arguments on appeal.

The record must affirmatively reflect that the defendant waived those rights voluntarily with "sufficient awareness of the relevant circumstances . . . and with the advice of competent counsel," *Commonwealth* v. *Fernandes, supra* at 715, and "was advised of the elements of the offense or that he admitted facts constituting the unexplained elements," *Commonwealth* v. *Robbins, supra.*

It is axiomatic that, if the defendant does not plead guilty and does not waive these rights, the judge need not conduct a plea colloquy. See *Commonwealth* v. *Stevens*, 379 Mass. 772, 774-776 (1980). Here, the defendant plainly exercised his right to trial by jury. The defendant also confronted the witnesses against him. Most witnesses were, in fact, vigorously cross-examined. Contrary to the defendant's contention, this was no "summary process."

The defendant plainly did waive his right not to incriminate himself. But the most relevant waiver of this right occurred long before the defendant took the stand at his trial. The police carefully created a record of the defendant's waiver of the right to remain silent in their 1998 interview, after which he signed a detailed, inculpatory account of the murder. He repeated the account in material respects when he testified at the Velez-Vega trial. The Commonwealth entered the defendant's prior statements in evidence. The practical benefit of the colloquy that the defendant now says should have been provided here is obscure. The defendant also does not argue (in the motion or on appeal) that counsel was manifestly unreasonable in failing to request such a colloquy.

Indeed, the defendant's testimony was hardly a submission for judgment of guilt. The trial served a purpose from his point of view. He used the opportunity as a subtle attempt to humanize himself, diminish his apparent moral (if not legal) culpability, and thereby sway the consciences of the jurors. See *Commonwealth* v. *Hebert*, 379 Mass. 752, 755 (1980) ("Although it is improper for a juror to disregard the law as given by the judge, it remains within the power of a juror to vote his or her conscience"). Counsel for the defendant argued as part of his closing that "justice would be done . . . when you find [the defendant] not guilty of murder," reasoning in part that the

defendant had helped to bring his accomplices to justice. The verdict slip provided to the jury contained the option of finding the defendant not guilty. The defendant's conduct of the trial, taken as a whole, was far from the equivalent of a guilty plea.

The decisions that the defendant cites in support of his position are inapposite. Although some attributes of trial were present in those cases, all involved plain instances of summary procedure. See *Commonwealth* v. *Lewis*, 399 Mass. 761, 762-763 (1987); *Commonwealth* v. *Feaster*, 25 Mass. App. Ct. 909, 909-910 (1987); *Commonwealth* v. *Nydam*, 21 Mass. App. Ct. 66, 67 (1985); *Commonwealth* v. *Hill*, 20 Mass. App. Ct. 130, 131-133 (1985). The matters were not tried to juries and the defendants generally entered stipulations at the beginning of trial concerning the veracity of the evidence against them, and gave up their right to confront the witnesses. In *Commonwealth* v. *Nydam*, *supra* at 67-68, a lone witness did take the stand, but the testimony was "perfunctory," "narrative," and related only to some of the elements of the crime, and the sole witness was not actually subjected to "meaningful" cross-examination. Cf. *Commonwealth* v. *Stevens*, *supra* at 775 (no colloquy required where prosecution witnesses actually testified and the Commonwealth "was put to its proof beyond a reasonable doubt and met it"); *Commonwealth* v. *Babcock*, 25 Mass. App. Ct. 688, 690-691 (1988) (colloquy unnecessary despite abbreviated procedure because "[t]here [was] no expression by the defendant that he simply wanted to get the whole business over with"). The judge was not required to conduct a plea colloquy.[6]

*Relief pursuant to G. L. c. 278, § 33E.* We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E. There is no reason to exercise our authority to reduce the jury's verdict on the murder charge or to order a new trial.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*

---

[6]After considering similar arguments and facts, a Federal court reached the same conclusion, as a matter of Federal law, that no colloquy was required when the defendant inculpated himself at trial. *United States* v. *Escandar*, 465 F.2d 438, 442-443 (5th Cir. 1972).