COMMONWEALTH *vs.* DENNIS W. MEGGS. February 5, 1976. 1. There was no pre-trial motion to suppress or for exculpatory evidence and nothing at trial to suggest that any of the witnesses had identified a photograph of someone other than the defendant as a likeness of the person who had perpetrated the crimes. The judge appears to have accepted as true the representations of the prosecutor and the police that the photographs which had been shown to the various witnesses had not been kept segregated and were thus not available. There was no error in the judge's refusal to order the production of such photographs on the single occasion when a request to that effect was made. *Commonwealth* v. *Gibson,* 357 Mass. 45, 47, cert. den. 400 U. S. 837 (1970). *Commonwealth* v. *Clark,* 3 Mass. App. Ct. 481, 485 (1975). 2. The instruction given the first witness immediately prior to the commencement of the morning recess on the first day of trial reflected the sequestration order which had been made at the defendant's request, and the exception (taken at the conclusion of the recess) came too late. There had been no pre-trial motion for any exculpatory statement which might have been made by any of the four witnesses specifically identified in one of the indictments; there is nothing to suggest that the prosecution had done anything to impede access to any of those witnesses in advance of trial (contrast *Commonwealth* v. *Balliro,* 349 Mass. 505, 515-518 [1965]); and the judge did not limit the scope or extent of cross-

examination in any respect. In the circumstances we see no reversible error in the judge's instructing two of those witnesses (one of whom had been specifically identified in both indictments) not to talk to defense counsel during the ensuing recesses that were taken while the witnesses were actually on the stand. 3. Our consideration of (a) the absence of any pre-trial motion to suppress, (b) the cross-examination of the first witness (which placed all four occupants of the apartment together in the police station when the first positive identification of the defendant may have been made), (c) the defendant's rather obvious disinclination to act on the judge's pointed suggestions concerning the absence of any request for a voir dire made at a time prior to the offer of any voice identification testimony ("You have the unusual technique of not requesting a voir dire or a motion to suppress identification"; "[A]gain, I think the record ought to show there were no motions here presented for a voir dire or to suppress identification"), (d) the extensive cross-examination of each of the four occupants of the apartment concerning the voice identifications made by all of them, and (e) the absence of any motion to strike any of that testimony (or any of the in-court identifications) following the police explanations of the circumstances surrounding the identifications leads us to conclude that the defendant's purpose and trial strategy (notwithstanding his perfunctory and sometimes belated objections and exceptions) were to submit to the jury rather than the judge the determination of all questions concerning the possibility that the voice identifications had been the product of impermissible police suggestion. See *Commonwealth* v. *Torres,* 367 Mass. 737, 740, 741 (1975). See also *Commonwealth* v. *Underwood,* 358 Mass. 506, 509-510 (1970). The defendant appears to have been content with the portion of the charge directed to all the identification testimony ("[D]id the government establish by clear and convincing testimony on the stand under direct and cross examination that these girls had a reasonable source of identification at the time of the alleged confinement in the . . . [apartment] so as not to give rise to a very substantial likelihood of misidentification?"), and we see no reason to speculate now as to what findings or rulings the judge might have made if the voice identification questions had been submitted to him for his determination. 4. No exception was taken to the instruction given at the close of the prosecution's case at the conclusion of the fourth day, and no "grave prejudice to the defendant" (*Commonwealth* v. *Coleman,* 366 Mass. 705, 711 [1975]) has been demonstrated. The important thing, as the judge had previously instructed and as he reiterated in substance on the occasion in question, was that the jury should not come to any conclusion until it had heard all the evidence, the arguments and the charge. 5. The question to Fordyce was bad because at the time it was put there was no foundation for the implicit assertion or suggestion that the defendant had completed his work before leaving the inn. In any event, the whole topic was thoroughly explored in the course of the subsequent direct examination of the same witness. 6. No exception was taken to any part of so much of the charge as was directed to the subject of the defendant's alibi, and the defendant still hesitates to point to any particular portion thereof as erroneous. See *Commonwealth* v. *Ramey,* 368 Mass. 109, 113-115 (1975). The charge was given prior to the admonitions of *Commonwealth* v. *McLeod,* 367 Mass. 500 (1975), but was nevertheless explicit on the point that "[t]he defendant has no

Rescript Opinions.

burden of proving his innocence." See *Commonweath* v. *Leaster,* 362 Mass. 407, 416-417 (1972). 7. There is no merit to any of the assignments of error not discussed herein. Some of them border on the frivolous. Others are on the wrong side of the border.

*Judgments affirmed.*

*Conrad W. Fisher* for the defendant.

*Gary A. Nickerson,* Assistant District Attorney, for the Commonwealth.