COMMONWEALTH *vs.* DENNIS W. MEGGS.

No. 89-P-1460.

Barnstable. December 14, 1990. - February 8, 1991.

Present: DREBEN, KAPLAN, & GREENBERG, JJ.

*Practice, Criminal*, New trial, Hearing. *Rape. Evidence*, Scientific test.

Newly discovered identification evidence provided by scientific tests not available at the time of a defendant's 1973 rape trial raised a "substantial issue" under Mass.R.Crim.P. 30 (c) (3) that a judge, in the circumstances, should not have decided on the basis of affidavits alone; on remand, the defendant was to receive an evidentiary hearing on his motion for a new trial. [114-116]

INDICTMENTS found and returned in the Superior Court on December 7, 1972.

A motion for a new trial, filed on September 19, 1984, was considered by *Elizabeth J. Dolan*, J.

*Gary K. Dubcoff* (*Barbara Equen Rodriguez* with him) for the defendant.

*Russel J. Wilson*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Subsequent to the defendant's conviction[1] in October, 1973, on four counts of assault while armed in a dwelling, and of rape, scientific tests to identify the blood grouping of semen donors became acceptable as evidence in criminal cases. Such tests were not available at the time of the defendant's trial.[2]

---

[1] The convictions were affirmed in *Commonwealth* v. *Meggs*, 4 Mass. App. Ct. 773 (1976).

[2] We take our facts from a statement of agreed facts which was prepared because the trial transcript, with the exception of the third volume, is unavailable. At trial a prosecution expert, a chemist with the Department of Public Safety, testified that a test performed by him on the victim's underpants revealed the presence of seminal fluid. He stated that there was no

On August 27, 1982, a judge of the Superior Court allowed the defendant's postjudgment motion to produce evidence for analysis by the defendant's expert to be conducted in California. In September, 1984, the defendant filed a motion for a new trial based on the results of those tests. For a reason not disclosed in the record, the motion was not acted upon until August 10, 1988.

This appeal is from the denial of that motion by a Superior Court judge without an evidentiary hearing. In support of the motion for a new trial, the defendant filed an analytical report dated November 24, 1982, by Brian Wraxall of the Serological Research Institute in California, supplemented by an undated affidavit.[3] Wraxall's affidavit interpreted the report and set forth that he had received from the Commonwealth the underpants introduced at trial and, from defense counsel, samples of blood, saliva and semen from the defendant. The underpants stain was subjected to a number of tests. Wraxall tested for semen and found a concentration high enough that, if the donor were a secretor, his blood group substances would have been detected by a test known as the absorption-inhibition test. Wraxall found no ABO blood group substances using that test, which led him to conclude that the semen donor must be a nonsecretor.[4] That the

---

test which could determine whether sperm found in seminal fluid could be compared with other sperm to determine whether or not it came from the same male.

[3]The affidavit bears an acknowledgment of a notary dated March, 1988. Wraxall's resume was attached and states that he has written and taught extensively on identification and typing of blood substances in dried bloodstains and body fluids and has presented expert testimony, both for the prosecution and the defense, in the field of forensic serology in sixteen States, including Massachusetts.

[4]The stain was also subjected to a test which Wraxall called "more sensitive," the absorption-elution test. This test, he asserted, is used for determining small amounts of ABO blood substances found in nonsecretors and in diluted stains from secretors. The test showed small amounts of type A substance which could have originated from the victim's secretions or the semen. He added, "However, it *does not* show that the semen donor is a secretor" (emphasis in original).

donor was a nonsecretor was confirmed by the Lewis system of grouping.[5]

Because Wraxall did not have blood samples from the victim (see note 4, *supra*), he could not be sure of the exact ABO type of the semen donor, but the analysis showed that the donor was a nonsecretor. Since the defendant is an ABO type A secretor, Wraxall concluded that "the semen *could not* have originated from Dennis Meggs" (emphasis in original).

Wraxall rejected two possibilities: one was that the panty stain, which was ten years old when examined, had degraded and the ABO substances had been lost. Wraxall concluded that this had not happened (1) because ABO substances are extremely stable, (2) because the P30 protein and acid phosphatase enzymes which were detected on the stain are not so stable and would generally be lost before the ABO substances, and (3) because Lewis antigens were also detected.

Wraxall also considered and rejected the possibility that the semen stains would not have shown the defendant's blood type. The defendant was not a "low level" ABO secretor, but rather a normal ABO A type secretor, and the concentration of semen on the panties was sufficient for Wraxall to have detected Meggs's blood group substances had they been present.

In opposition to the defendant's motion, the Commonwealth presented the affidavit of James P. Canney, a laboratory supervisor with the Department of Public Safety Crime Laboratory. He, too, had significant experience in the field of forensic serology. In conclusory fashion,[6] he made three statements disputing Wraxall's conclusions: (1) "It is my opinion based upon my experience and training and survey of the literature that the prolonged storage of semen stains on clothing such as underwear at room temperature would cause

---

[5] For a short discussion of these tests see *Commonwealth* v. *Sims, ante* 25, 27 n.5 (1991).

[6] It appears that Canney did not examine the defendant's blood, semen or saliva samples, or semen stain on the victim's underwear. He listed general studies in support of his conclusion.

a significant degradation of the blood group substances present in those stains." (2) "It is my opinion based upon my experience and training and on a survey of the literature that the presence of Le(a) [Lewis] substances in a seminal stain does not confirm the presence of a nonsecretor." (3) "It is my opinion based upon my experience and training and on a survey of the literature that the presence of a high acid phosphatase concentration in a seminal stain on female clothing such as underpants may result either from the presence of a mixture of semen acid phosphatase and vaginal acid phosphatase in that stain or from an increase in the acid phosphatase level due to bacterial action."

The motion judge — not the trial judge[7] — agreed that the evidence was now newly discovered. She concluded, however, "While the issue of identification is without a doubt a vital aspect in this case, the evidence to be presented is subject to countering opinions of experts; one, that the tests are conclusive, the other, that the tests cannot be conclusive due to the age and condition of the physical evidence."

We agree with the defendant that the motion should not have been decided on affidavits alone, and that a "substantial issue" meriting an evidentiary hearing under Mass.R. Crim.P. 30(c)(3), 378 Mass. 901 (1979), has been raised. *Commonwealth* v. *Saarela,* 15 Mass. App. Ct. 403, 407 (1983). We recognize that the decision whether to decide the motion on the basis of affidavits or to hear oral testimony is a matter within the discretion of the judge, *Commonwealth* v. *Stewart,* 383 Mass. 253, 257 (1981); *Fogarty* v. *Commonwealth,* 406 Mass. 103, 110-111 (1989), and we do not suggest that every dispute among experts requires an evidentiary hearing. In this case, however, looking at the "seriousness of the issue asserted [and] also . . . the adequacy of the defendant's showing," *Stewart* at 257-258, we think the defendant is entitled to an evidentiary hearing.

Wraxall's résumé and bibliography indicate he is an eminent forensic serologist. His affidavit sets forth with precision

---

[7]The trial judge was deceased.

the tests performed on the particular stain involved, the reasons for his conclusion that the defendant "could not be the donor of the semen," and the basis for his rejection of the possibility that the stain had degraded.

Canney, on the other hand, did not examine the stain and gave only conclusory statements supported by sentences from various published studies. The quality of Wraxall's affidavit compared to Canney's precludes, in the absence of additional circumstances, a determination that the defendant has not raised a substantial issue "supported by a substantial evidentiary showing." *Commonwealth* v. *Stewart*, 383 Mass. at 260. *Commonwealth* v. *Saarela*, 15 Mass. App. Ct. at 406-407.

The statement of agreed facts which, among other things, incorporates the facts set forth in the defendant's brief on the previous appeal to this court, see note 2, *supra*, indicates that the case rested entirely on less than powerful identification evidence.[8] We recognize that there are significant policy reasons for according finality to old cases and that the Commonwealth will be at a disadvantage if a new trial should be ordered. Nevertheless, if it should appear on the basis of the blood grouping evidence that "justice may not have been done," Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), the date of the convictions, that is, the length of the defendant's sojourn in prison for these crimes, should not deny him a new trial.

The order denying the defendant's motion for a new trial is vacated, and the matter is remanded to the Superior Court for an evidentiary hearing on the blood grouping evidence. See *Commonwealth* v. *Moore*, 408 Mass. 117, 126 (1990), for a recapitulation of the standards governing the assessment of the probative value of newly discovered evidence.

---

[8]See the opinion in *Commonwealth* v. *Meggs*, 4 Mass. App. Ct. at 774 ("the cross-examination of the first witness . . . placed all four occupants [the identifying witnesses] together in the police station when the first positive identification of the defendant may have been made").

See also *Commonwealth* v. *Markham*, 10 Mass. App. Ct. 651, 654-655 (1980).

*So ordered.*