COMMONWEALTH vs. JOSEPH FACELLA.[1]

No. 95-P-738.

Suffolk. November 14, 1996. - December 23, 1996.

Present: GREENBERG, GILLERMAN, & FLANNERY, JJ.

*Practice, Criminal,* Plea, Assistance of counsel. *Attorney at Law,* Compensa-
tion, Contingent fee agreement.

An improper contingent fee agreement in a criminal case did not, on its
face, demonstrate a genuine or potential conflict of interest on the part
of an attorney retained solely to negotiate a plea agreement; moreover,
the defendant suffered no adverse consequence from the attorney's rep-
resentation; finally, there was no support in the record of the plea col-
loquy for the defendant's contention that the attorney coerced the
defendant's guilty plea: the defendant's motion for a new trial on the
ground of ineffective assistance of counsel was correctly denied. [359-360]

INDICTMENTS found and returned in the Superior Court
Department on April 12, 1989.

Motions for a new trial, filed on November 19, 1992, and
May 23, 1995, respectively, were considered by *Hiller B. Zo-
bel,* J.

*Lawrence Rizman* for the defendant.

*Nancy L. Hathaway,* Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. Over two years elapsed before the defen-
dant, Joseph Facella, represented by new counsel, moved for
a new trial after pleading guilty to seven indictments in the

[1] In an unpublished memorandum and order issued on December 23,
1996, under Rule 1:28 of the Appeals Court, we affirmed the judge's orders
denying the defendant's motion for leave to withdraw pleas of guilty. See
41 Mass. App. Ct. 1122 (1996). This opinion in general follows the original
rule 1:28 memorandum and order. We have condensed some of the analysis
and publish this opinion because of the novel issue concerning defense
counsel's contingent fee agreement.

Superior Court.[2] That time interval engenders an initial skepticism about the defendant's argument that his pleas were coerced by his original defense counsel. The gravity of the perceived deficiencies in defense counsel's conduct appears to have escaped the notice of the plea judge, who was also the motion judge. After hearing argument by counsel, the judge denied the motion without an evidentiary hearing. The defendant filed a timely notice of appeal, followed by a second motion for new trial in which he was represented by present appellate counsel. The judge, however, declined to act on this motion. We consolidated both appeals.

In asserting that he was entitled to an evidentiary hearing on his first new trial motion, the defendant mounts a three-pronged attack: that his guilty pleas were not knowing and voluntary; that a contingent fee agreement which he signed created either a genuine or potential conflict of interest that deprived him of the effective assistance of counsel during the change of plea proceedings; and that counsel was ineffective because he was not prepared for trial. Contrary to the defendant's contention, the judge properly exercised his discretion in concluding that the defendant's motion did not raise a "substantial issue," and that an evidentiary hearing was not required. See, e.g., Mass.R.Crim.P. 30(c)(3), 378 Mass. 901 (1979); *Commonwealth* v. *DeVincent,* 421 Mass. 64, 67,69 (1995). The judge is to apply the standard set out in rule 30 "rigorously," and may grant a motion to withdraw a guilty plea only if "it appears that justice may not have been done." *Commonwealth* v. *DeMarco,* 387 Mass. 481, 486-487 (1982). Mass.R.Crim.P. 30(b), 378 Mass. 900 (1978). Notwithstanding an ethical lapse of defense counsel, we affirm the denial of the defendant's motion.

---

[2]With respect to an indictment for armed assault with intent to murder, the judge sentenced the defendant to a term of from nine to fifteen years at M.C.I., Cedar Junction, and an additional from three to five year term concurrent with the governing sentence on an indictment for deriving support from earnings of a prostitute. On an indictment for kidnapping and on multiple indictments for assault and battery with a dangerous weapon, the judge imposed from three to five year terms concurrent with each other and consecutive to the governing sentence; then he suspended the sentences for five years and imposed probationary conditions. The eighth indictment, charging the defendant with aggravated rape was placed on file with consent of the defendant and is not before this court. See *Commonwealth* v. *Frey,* 390 Mass. 245, 246 (1983).

1. *The contingent fee agreement.* On October 20, 1989, the defendant and his father, Samuel Facella, executed a contingent fee agreement with Attorney Peter Beatrice. Under the express terms of the agreement, the Facellas retained Beatrice "for the purpose of negotiating a change of plea to a plea of guilty and to serve a sentence to jail agreeable to the [c]lients." The agreement states that Beatrice "shall put forth his best effort and judgment on behalf of [the defendant] and shall be deemed to have fully performed under th[e] [a]greement if he negotiates a sentence of less than eighteen to twenty years incarcerated. However, it is the goal of the [a]ttorney to negotiate a sentence which will result in as little time as possible to be served by [the defendant]." The agreement further states that "[i]t is expressly understood and agreed that [Beatrice] will not perform as [t]rial [c]ounsel for [the defendant] and the [Facellas] agree to execute any document which will allow [Beatrice] to withdraw as [c]ounsel if the [Facellas] reject a negotiated settlement of the . . . case." As to the fee, the agreement provides that the Facellas were to pay Beatrice $10,000 prior to the filing of an appearance and $15,000 "upon notification by [Beatrice] of the negotiated sentence of incarceration of no more than ten years."

On April 19, 1990, Beatrice requested a continuance and indicated to the judge that he was not prepared to try the case. He told the judge that he had carried out his obligations under the contingent fee agreement but that the defendant was reluctant to plead guilty. He explained that he did not have the "experience and forte to try this kind of case." The judge reminded Beatrice of his professional obligations. After a recess, the judge asked Beatrice who was going to try the case. Beatrice responded that Attorney Robert Stanziani would try the case if a continuance were granted. Beatrice told the judge that he had discussed a possible plea with the prosecutor and thought that would be the best resolution. The judge scheduled trial for April 23, 1990.

2. *The proceedings.* On that day, the defendant informed the judge that he was "willing to plead guilty to certain charges." Pursuant to Mass.R.Crim.P. 12(c), 378 Mass. 868 (1979), as amended by 399 Mass. 1215 (1987), the judge informed the defendant of the consequences of pleading guilty. During the course of the plea colloquy, the defendant testified that he was a college graduate with a degree in business

administration and that he managed a steel company. When the judge asked whether he had ever been treated for a medical condition, the defendant replied, "[a]lcoholism, depression and panic disorder." The defendant said that he was "not aware" of any present mental illness he might have, but disclosed that he was "being kept on" the drug Prozac at the Charles Street jail. He also stated that he was not taking any other medication, that he was not (at that time) under the influence of any drug, and that he had not consumed an alcoholic beverage for over one year.

The judge then reviewed the various indictments to determine whether the defendant understood the exact nature of the charges.[3] No problems of comprehension appeared. The prosecutor then informed the judge of the sentencing recommendation.[4] The prosecutor explained that the recommended probationary conditions reflected the defendant's "extremely serious and long-standing drug and alcohol problem." The defendant indicated that he understood he would be eligible for parole in six years.

After the judge explained the constitutional rights the defendant would be surrendering, the prosecutor reviewed the maximum sentence that could be imposed on each of the charges.[5] The judge then took the pleas. The judge perused a ten-page pretrial memorandum which bore the defendant's signature on each page, and which the defendant had corrected by deleting certain lines. The defendant acknowledged that the prosecutor's version of the events giving rise to the

---

[3]At one point, the defendant asked whether it was necessary that the judge read the indictments, as the defendant had "decided to plead guilty to everything except the aggravated rape." The defendant indicated that he did not want to be "changing [his] mind"; that his attorneys had advised him to plead guilty and that he was "willing" to do that. The judge told the defendant that the formalities had been prescribed by the Supreme Judicial Court and that he would observe them so that "there is no question as to what it is you are pleading guilty to."

[4]The sentences imposed were in accordance with the recommendation.

[5]Parenthetically, the judge then explained to the defendant that an individual, under confinement, sometimes "gets the idea that . . . the reason he pleaded guilty was because his lawyer made him do it." In those circumstances, the judge observed, his "tendency is to believe that when a [d]efendant is in front of me, under oath, looking at me that's when he is telling the truth," rather than when, after a period of time, the defendant writes an affidavit stating that he did not tell the truth at the original plea colloquy.

indictments, with some exceptions, was accurate and true. He said that he was pleading guilty "willingly, freely and voluntarily," and that no one forced or threatened him to plead guilty. He also acknowledged that no one had promised him that the judge would impose any particular sentence. Finally, the defendant stated that Beatrice had acted in his best interests. The judge granted a two-minute recess to permit the defendant to consult with counsel. Upon return, the defendant stated that he was curious about the mandatory three-year minimum term imposed under G. L. c. 272, § 7. It was explained to him to his apparent satisfaction. The judge then accepted the pleas.

On November 4, 1993, at the nonevidentiary hearing on the first new trial motion, the defendant was represented by Attorney Steven Topazio. The defendant's affidavit, which was presented to the judge, recites that Beatrice told him he would use his "connections" to get him a favorable outcome, informed him that the prosecutor "wanted [the defendant] to get about five years," but that the prosecutor was "softening up," and indicated that if he were given $15,000 Beatrice would try to keep the defendant completely out of jail. The affidavit also recites (1) that while in a holding area in the Boston Municipal Court on April 19, Beatrice and Stanziani approached him and suggested that he plead to a nine to fifteen year sentence but that he refused, telling the attorneys that he was innocent; and (2) that on April 23, Beatrice told him he should plead to all counts, except one, and that he would receive a nine to fifteen year sentence. The alternative, he was allegedly told, was that the trial would take place that day and that he could receive a life sentence.

We recount some of the plea judge's observations at the hearing. The plea had been entered into "after a lengthy colloquy and supported by a document which the defendant not only read, but corrected and signed." The judge represented that he remembered the case with "great clarity," that there was on the record strong evidence of a "series of violent and brutal events," and that had there been a conviction, the result might very well have been a sentence "substantially more severe than the one that the government was prepared to recommend." The judge suggested, with respect to the contingent fee agreement, that the Facella family was going into the arrangement "with its eyes open," and that Beatrice

had been retained to obtain an agreement. He questioned how there could be a conflict of interest when the "very people who are said to have suffered from the conflict of interest" were the signatories to the agreement. Finally, the judge observed that the defendant had been in "full command of his faculties" at the time of the pleas, and that the defendant had "gotten a very good deal . . . for a horrendous series of offenses" which the defendant does not deny having committed. Announcing that "justice was done," the judge denied the motion.

3. *Analysis.*

a. *Ineffective assistance of counsel.* The defendant argues here that the contingent fee agreement executed by the Facellas with Beatrice, in essence, deprived Beatrice of any incentive to achieve the best outcome for the defendant. There can be no doubt that Beatrice's entry into the agreement was unethical. Supreme Judicial Court Rule 3:08, DF 5(*b*), 382 Mass. 804 (1981), provides that it is "unprofessional conduct for defense counsel to enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case." The preface to the rule also provides, however, that the rules "are not published as criteria for the judicial evaluation, to determine the validity of a conviction, or the behavior of prosecutors *or of the competence of defense counsel*" (emphasis supplied). 382 Mass. 798. That such an agreement was executed, does not, standing alone, suggest ineffective assistance of counsel. Danger lurks in situations where "a contingent fee arrangement in a criminal case may lead to a conflict of interest, such as influencing counsel to advise against a favorable plea bargain." *O'Donnell* v. *Bane*, 385 Mass. 114, 118-119 (1982). Here the judge implicitly found that the agreement on its face intimated no conflict of interest, genuine or potential. Whether a conflict of interest exists is a mixed question of fact and law. *Commonwealth* v. *Wooldridge*, 19 Mass. App. Ct. 162, 167 (1985), and cases cited. Beatrice had no incentive to pressure the defendant into an involuntary plea, and there was nothing in the terms of the agreement stating that the defendant would have to plead guilty before Beatrice would be entitled to an additional fee. The agreement provided that Beatrice would be paid an additional $15,000 if he negotiated a sentence of no more than ten years. He did so. When the defendant signed the agree-

ment, he acknowledged that Beatrice's best efforts would be advanced if he negotiated an incarceration of less than eighteen to twenty years. This was accomplished.[6] The defendant's sentences were well under the maximum terms provided for the offenses involved. In addition, the defendant avoided sentence on the most serious of the indictments returned against him. Beatrice did his job by negotiating an excellent outcome for his client in the circumstances. Although it does appear that the contingency aspect of the agreement violates ethical rules, it does not appear that the defendant suffered any adverse consequences. Accordingly, no substantial issue was raised with respect to the agreement.

There is also no substantial issue raised by the claim that Beatrice's acknowledgment at the April 19 proceeding that he was not prepared to try the case demonstrated the ineffectiveness of his assistance. Beatrice informed the judge that Stanziani was available as trial counsel. He also gave to the judge a copy of the fee agreement, the express terms of which establish that Beatrice would not act as trial counsel in the event that plea negotiations failed. Under these circumstances, the judge's determination was correct.

Finally, the "contemporaneous record" of the defendant's responses at the plea colloquy shows that there is no facial basis for the claim that defense counsel coerced the defendant into pleading guilty. See *Commonwealth* v. *Quinones,* 414 Mass. 423, 431-432 (1993).

b. *Refusal to act on second new trial motion.* In his second motion for a new trial, the defendant claimed that his guilty pleas were involuntary because he was under the influence of the antidepressant drug Prozac, and that the court failed to make any inquiry into the possible effects of the drug on his ability to reason. The judge declined to act on the motion, and the question raised in the motion, therefore, is not ripe for review. See *Commonwealth* v. *Layne,* 386 Mass. 291, 296-297 (1982). Nevertheless, we address the question briefly, lest it be the subject of further proceedings in the Superior Court or here.

The judge was not obliged to credit the self-serving affida-

---

[6]At sentencing on May 7, 1990, the judge commented that "there was no question in [his] mind that this case, if the jury had returned a verdict of guilty, would entail substantially higher periods of incarceration than what the government is prepared to recommend."

vit, submitted by the defendant in connection with the motion, in which he stated that his "ability to think and make rational decisions was severely impaired" by his taking Prozac. The judge was entitled to credit the defendant's original statement made at the plea hearing that he was not under the influence of any drug that affected his judgment. See *Commonwealth* v. *Cepulonis*, 9 Mass. App. Ct. 302, 304 (1980) (the plea judge is the "ultimate arbiter on questions of credibility"). We defer to the judge's ability to decide the issue based on the defendant's original disclaimer and the defendant's demeanor at the time he entered his pleas. See *Commonwealth* v. *Russin*, 420 Mass. 309, 317 (1995) (where the plea judge was also the motion judge). As in *Commonwealth* v. *DeMarco*, 387 Mass. at 483, the defendant's "sole motive for asking permission to withdraw his plea was his dissatisfaction with the sentence." When tendering his original plea, the defendant acknowledged that he was doing so voluntarily and free of coercion, and stated that he was pleading guilty only because he was guilty and for no other reason. The pretrial memorandum, which the defendant had both signed on each page and corrected, was strong evidence that the defendant knew what he was doing at the time. Cf. *Commonwealth* v. *Taylor*, 398 Mass. 725, 727, 729 (1986). The defendant's ability to comprehend was also shown by his statement that he was pleading guilty only to "certain charges."[7] Not the slightest hint appears that "his plea was nevertheless involuntary or unknowing for reasons not appearing of record." *Commonwealth* v. *Foster*, 368 Mass. 100, 108 n.7 (1975). There is ample evidence that given the serious nature of the charges, the defendant had a strong incentive to plead guilty, and that he did so voluntarily.[8] Therefore, counsel on the first new trial motion was not ineffective for failing to raise the Prozac issue in that motion.

---

[7]We note the defendant is not claiming that the plea colloquy itself was deficient in any respect. See 356-358, *supra*.

[8]Beatrice filed a memorandum in "support of the recommended sentence" which recites that the defendant has offered to plead guilty for many reasons, "amongst which is the fact that he cannot provide alternative explanation of the injuries to [the victim]."

The order denying the defendant's first new trial motion without an evidentiary hearing is hereby affirmed. The appeal is dismissed as to the second motion for a new trial.

*So ordered.*