COMMONWEALTH *vs.* LAWRENCE H. LAMEIRE.[1]

No. 99-P-157.

Bristol. June 7, 2000. - October 20, 2000.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Due Process of Law,* Competency to stand trial. *Evidence,* Competency. *Practice, Criminal,* Competency to stand trial, Defendant's competency, Findings by judge.

A Superior Court judge did not abuse his discretion in ruling that a criminal defendant was competent to stand trial, based on a psychologist's examination and report pursuant to G. L. c. 123, § 15(*a*), and the judge's observation of the defendant's courtroom behavior, demeanor, and interaction with counsel. [275-278]

No substantial risk of a miscarriage of justice at a murder trial arose from asserted failures of trial counsel, alleged improprieties in the prosecutor's closing argument, or evidentiary rulings by the judge. [278-279]

INDICTMENTS found and returned in the Superior Court Department on April 24, 1996.

The cases were tried before *Raymond J. Brassard,* J.

*Holly T. Smith* for the defendant.

*Sharon L. Sullivan-Puccini,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Lawrence H. Lameire was convicted by a jury on indictments for rape of a child by force (G. L. c. 265, § 22A); burglary-assault on an occupant of a dwelling (G. L. c. 266, § 14); and assault (G. L. c. 265, § 13A). Not until the second day of impanelment did defense counsel question whether Lameire was competent to stand trial. After speaking with the defendant and hearing the report of the court psychologist, the judge concluded that Lameire was sufficiently able. On the ground that these efforts did not constitute a "meaningful" inquiry into his competence to stand trial, Lameire argues that

---

[1] The name "Lameire" also appears in the record as "LaMeire."

he was deprived of due process. He relies on *Commonwealth* v. *Prater*, 420 Mass. 569, 573 (1995) (one who cannot understand the proceedings, consult with counsel, and assist in his own defense may not be tried), and *Commonwealth* v. *Hill*, 375 Mass. 50, 54 (1978) (where there was information available to the trial judge "sufficient to raise a substantial doubt as to the defendant's competence to stand trial . . . the judge was required to hold an evidentiary hearing on that question").

We outline the facts of the case and the information presented to the trial judge as they relate to his decision to go forward with the trial over the objection of defense counsel. The Commonwealth submitted that Lameire broke into a friend's house late one night in April of 1996 and brutally raped the babysitter, who had just turned fifteen years of age. The victim quickly identified Lameire as the perpetrator, others placed him at the scene, and circumstantial evidence tied him to the crimes. He was arrested a few days later. At the time, he had his own attorney, but new counsel was appointed for him in June when he could no longer afford his private counsel's services. Lameire's second lawyer suggested he base a defense on diminished capacity or insanity, but Lameire refused. As a result, in June of 1997 (over one year after his arraignment), Lameire came before a Superior Court judge and requested another lawyer. A third lawyer was assigned and he met with Lameire at least five times before December 5, 1997, the date set for trial.

The morning of trial, defense counsel told the judge in a lobby conference that he had reached an impasse with the defendant. Lameire was adamant about taking the stand and testifying in his own defense. As this ran counter to the advice his counsel had given him, Lameire wanted to fire him and postpone the trial, beginning again with a new attorney. Once in open court, the judge conducted the first of several colloquies with the defendant. Lameire declared that he wanted new counsel because his lawyer "hasn't pursued the defense I've asked. He has not worked on my behalf or [in] my best interests," by which he meant, he explained to the judge, that the lawyer had advised Lameire against testifying. The judge reassured Lameire that the decision to take the stand or not was Lameire's alone, and asked defense counsel to outline "what has been done in this case over the last twenty months by both prior counsel and yourself." Counsel did so, and the judge also invited him to place the tactical disagreement and counsel's

reasons for his advice on the record, in the absence of the prosecutor or judge, pursuant to *Commonwealth* v. *Adams,* 374 Mass. 722, 730 n.4 (1978).

Based on this initial discussion, the judge pronounced himself satisfied that the defendant had been effectively represented. It was certain, he told Lameire, that the trial would go forward that day as scheduled, so Lameire had three choices: to proceed with present counsel, to proceed pro se (a course which the judge emphatically discouraged), or to represent himself with the assistance of standby counsel. Lameire announced that he did not want to deal with defense counsel even on a standby basis. There followed further remonstrations from Lameire, and the judge patiently repeated that he would not appoint yet another lawyer, and he urged Lameire to accept counsel's help. Lameire continued to register his unhappiness. The judge reiterated Lameire's right either to testify or not to testify, and emphasized the importance of having experienced counsel try the case. The judge then took a recess to allow Lameire the benefit of time to consider his options. The conversation had consumed twenty minutes, the recess fifteen more, and in the end Lameire held steadfast to his decision to try the case himself. The judge again stated that Lameire's prior and present representation was adequate, but he respected Lameire's decision. Just to be on the safe side, however, he ordered defense counsel to remain available in case Lameire changed his mind.

The judge proceeded to explain to Lameire the procedure for individual voir dire of potential jurors and some ground rules for questioning witnesses. The first panel of potential jurors was called into the courtroom. As the judge prepared to commence juror selection, Lameire and defense counsel came to the sidebar. Lameire stated that he wanted defense counsel to represent him after all. During the remainder of the day, nine jurors were selected, the rest to be chosen after the weekend recess.

There was a complication on Monday morning, and the judge announced to the assembled jurors that the impanelment would be delayed. After the jurors had been dismissed, the judge explained that Lameire, while waiting in the courthouse lockup, had cut himself, "apparently intentionally, with a razor blade somewhere on his wrist or lower arm area." He had been taken to a nearby hospital emergency ward so that his wounds could be treated. To deal with this unforeseen development, the judge

arranged to have Lameire examined by the court psychologist on duty, Dr. Charlotte Denton.

Around noon, Dr. Denton reported her findings to the judge. She said, "In terms of competency, [Lameire] seems to have a reasonable understanding of the factual nature of the proceedings against him. However, his rational understanding[,] at least as he describes it[,] appears to be impaired by a rather paranoid process in which he insists that everyone is against him and there is a rather massive collusion going on within this system. I think it's likely that he is malingering. However, I can't guarantee that; and given the seriousness of the charges against him, I'm going to recommend that he be sent to Bridgewater [State Hospital] for further evaluation of competency to stand trial." The judge asked her to elaborate on why she felt that Lameire was malingering. She explained that his thought process did not seem disordered, his answers to questions were relevant, and his manner was inconsistent with what he said he was experiencing. In addition, his self-inflicted wounds were "quite superficial."

At the conclusion of Dr. Denton's testimony, defense counsel asked that the judge follow the psychologist's recommendation to commit Lameire to Bridgewater for further evaluation. He also moved for a mistrial. Both requests were opposed by the prosecutor, who argued that the morning's excitement was simply another attempt by Lameire to postpone trial. She pointed out that throughout Friday's lengthy colloquy Lameire had not exhibited any appearance of incompetence, and also noted that there were no reports of problems from the house of correction over the weekend. Suspiciously, it was not until five or ten minutes before Lameire knew impanelment was to resume that he inflicted these superficial wounds on himself. Having heard from everyone, the judge determined on the basis of his observations from the previous Friday that Lameire was able to "reasonably cooperate with his lawyer in defending himself." He accepted Dr. Denton's testimony that Lameire understood the proceedings against him and likely was malingering. While recognizing that her examination was hardly infallible, he concluded that further evaluation was not warranted. The remaining jurors were seated and the trial commenced.

Periodically throughout the trial, the judge announced for the record, in the absence of the jurors, that he had observed many cooperative interactions between Lameire and defense counsel.

At the end of the second day, the judge also placed on the record his observation that defense counsel was effective and competent in representing the defendant. Defense counsel took the opportunity to inform the judge of Lameire's dissatisfaction with counsel's questioning of the complainant, and Lameire's objection to being "forced" to trial with defense counsel as his attorney. The judge reminded Lameire that no one had forced him to do anything; proceeding with counsel had been Lameire's decision. Again, the judge clearly advised Lameire that the options to proceed pro se or with standby counsel were open to him at any time. Lameire remained with his attorney.[2]

1. *Competency to stand trial.* From cases of the United States Supreme Court, constitutional guidelines emerge for determining an accused's competency to stand trial. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope* v. *Missouri,* 420 U.S. 162, 171 (1975). A judge making this determination must focus on whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky* v. *United States,* 362 U.S. 402, 402 (1960). " '[W]here the evidence raises a "bona fide doubt" as to a defendant's competence to stand trial,' a sanity hearing is constitutionally required." *Commonwealth* v. *Barnes,* 399 Mass. 385, 389 (1987), quoting from *Pate* v. *Robinson,* 383 U.S. 375, 385 (1966).

Judges wrestling with a competency question are guided by

---

[2]We alight on an issue, not raised by either party, but to which we are alerted by the judge's excellent response to Lameire's oscillating request to act as his own lawyer. A criminal defendant has a right to reject the appointment of counsel and represent himself at trial. See *Faretta* v. *California,* 422 U.S. 806, 835-836 (1975). The right to self-representation, however, "is not absolute unless there is an unequivocal and timely invocation of the right accompanied by an adequate waiver of the right to counsel." *Commonwealth* v. *Miller,* 6 Mass. App. Ct. 959, 960 (1978). Lameire's initial invocation was honored until he changed his mind just prior to jury selection, and when later reminded that the option remained available, he declined to exercise it. Contrast *Commonwealth* v. *Chapman,* 8 Mass. App. Ct. 260, 267 (1979) (defendant "submitted to . . . representation [by counsel] only after repeated exceptions to the judge's denial of his pro se rights").

G. L. c. 123, § 15, set out in the margin.[3] Section 15(a) contemplates a threshold inquiry, commonly referred to as a screening examination, to be conducted by a court-appointed psychiatrist or psychologist. A judge may decide the competency question after receiving the report of that examiner. In those situations where the screening leaves a doubt as to whether the defendant is competent, an inpatient examination pursuant to § 15(b) may be ordered.

The judge in the case before us chose not to order further evaluation, relying instead on the psychologist's preliminary examination. The judge's determination of competency, to which we give deference, see *Commonwealth* v. *Prater*, 420 Mass. 569, 574 (1995), was based on observation of Lameire's behavior in the courtroom, his demeanor and interaction with defense counsel, and the psychologist's testimony. See *Com-*

---

[3]General Laws c. 123, § 15, inserted by St. 1986, c. 599, § 38, provides in relevant part: "(a) Whenever a court of competent jurisdiction doubts whether a defendant in a criminal case is competent to stand trial or is criminally responsible by reason of mental illness or mental defect, it may at any stage of the proceedings after the return of an indictment or the issuance of a criminal complaint against the defendant, order an examination of such defendant to be conducted by one or more qualified physicians or one or more qualified psychologists. Whenever practicable, examinations shall be conducted at the court house or place of detention where the person is being held. When an examination is ordered, the court shall instruct the examining physician or psychologist in the law for determining mental competence to stand trial and criminal responsibility.

"(b) After the examination described in paragraph (a), the court may order that the person be hospitalized at a public facility or, if such person is a male and appears to require strict security, at the Bridgewater state hospital, for a period not to exceed twenty days for observation and further examination, if the court has reason to believe that such observation and further examination are necessary in order to determine whether mental illness or mental defect have so affected a person that he is not competent to stand trial or not criminally responsible for the crime or crimes with which he has been charged. . . .

" . . .

"(d) If on the basis of such reports the court is satisfied that the defendant is competent to stand trial, the case shall continue according to the usual course of criminal proceedings; otherwise the court shall hold a hearing on whether the defendant is competent to stand trial; provided that at any time before trial any party to the case may request a hearing on whether the defendant is competent to stand trial. A finding of incompetency shall require a preponderance of the evidence. If the defendant is found incompetent to stand trial, trial of the case shall be stayed until such time as the defendant becomes competent to stand trial, unless the case is dismissed."

monwealth v. *DeMinico*, 408 Mass. 230, 235-236 (1990). From a constitutional perspective, we view this process as sufficient for the judge to decide Lameire's competency as "competency" is defined in *Dusky* v. *United States*, 362 U.S. at 402. We are not persuaded that the judge's conclusion was an abuse of discretion.[4] A motion judge need not accept expert testimony that a defendant is incompetent, see *Commonwealth* v. *Prater*, 420 Mass. at 575; he certainly need not accept a recommendation that a defendant the expert believes is competent receive further evaluation.

Because "[a]n attempted suicide is an extremely serious action," *United States* v. *Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997), the decision to dispense with further evaluation should be made charily, but "we do not believe that every suicide attempt inevitably creates a doubt concerning the defendant's competency." *Id.* at 1318-1319. In *Loyola-Dominguez*, the court was persuaded that such a doubt existed, primarily because of the summary nature of the judge's inquiry — only four questions were asked of the defendant, and his replies raised more concerns about his competence than they laid to rest. See *id.* at 1316-1317, 1319. In a case more similar to the one at bar, *Commonwealth* v. *Russin*, 420 Mass. 309, 311 (1995), several days into trial the defendant slashed his wrists before trial started for the day and claimed to have consumed between forty-five and fifty Tylenol pills. He was treated and an examination was completed pursuant to § 15(*a*). Medical and laboratory reports placed in evidence indicated that the cuts were superficial and that there was no medical indication that he had swallowed the pills. The psychiatrist testified that the defendant was not suicidal and that he was competent to continue the trial. *Ibid.* Although the expert witness in our case did not express absolute certainty concerning the defendant's

---

[4]That discretion is "[o]ne of the most exercised and least understood of trial court . . . activities — a very basic activity that must be understood in all areas of decisionmaking and [in] . . . criminal . . . appeals, and one of the most difficult to address rationally. The need for discretion arises because there are areas in which the trial court . . . must exercise a certain measure of judgment in reaction to its 'on the scene' presence at trial . . . ." Davis, Standards of Review: Judicial Review of Discretionary Decisionmaking, 2 J. App. Prac. & Process 47, 49 (Winter 2000).

"Areas in which the trial court may exercise discretion are viewed . . . as pastures in which the trial judge can roam and graze freely, rendering rulings his appellate colleagues might not have made . . . ." *Id.* at 55.

competence, she made her opinion clear. Moreover, Lameire exhibited no odd behavior during the trial which could have alerted the judge to a problem. The record is replete with what appear to be the machinations of a person whose behavior was calculated to delay and disrupt a trial which was very likely to result in conviction of a serious offense. It does not read like a record of mental incompetence. Contrast *Commonwealth* v. *Simpson*, 428 Mass. 646, 652 (1999) (defendant's "implausible, rambling, considerably incriminatory" opening statement and subsequent trial conduct raised a legitimate competency question).

2. *Miscellaneous issues.* We deal summarily with Lameire's remaining contentions, none of which was raised at trial. There was no error in the admission of the officer's fresh complaint testimony because the events to which he testified were raised first during the complainant's testimony. See *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 219 (1997). The complainant's hysterical phone call to her mother immediately after the rape qualified for admission as an excited utterance. See *Commonwealth* v. *Rivera*, 397 Mass. 244, 248 (1986). The prosecutor's closing argument did not create a substantial risk of a miscarriage of justice. Her summation of the facts was within bounds. See *Commonwealth* v. *Haas*, 373 Mass. 545, 557 n.11 (1977), quoting from Brown & Seckinger, Problems in Trial Advocacy 159-160 (1977-1978) ("duty of counsel is to fit all the pieces of evidence together so that they form a comprehensive and comprehensible picture for the jury"). And her appeals to sympathy, which the defendant alleges, do not require a new trial in light of the proper jury instruction and the strength of the evidence. See *Commonwealth* v. *Kent K.*, 427 Mass. 754, 761-762 (1998); *Commonwealth* v. *Jordan*, 49 Mass. App. Ct. 802, 814 (2000). Lameire's two sentences were not duplicative. Burglary-assault on an occupant and rape of a child by force each require additional facts not required for conviction of the other offense. See *Commonwealth* v. *Smith*, 44 Mass. App. Ct. 394, 396 (1998), citing *Commonwealth* v. *Crocker*, 384 Mass. 353, 360-361 (1981). Finally, "claims of ineffective assistance of counsel, at least in the first instance, should be advanced in the context of a motion for a new trial." See *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107 (1999). No such motion was brought. In any event, the claim lacks merit. Contrary to Lameire's assertions, trial counsel did make reference to

information that may have mitigated his punishment at the sentencing hearing, and did request concurrent sentences. "Counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel . . . ." *Commonwealth* v. *Fredette*, 396 Mass. 455, 464-465 (1985). The defendant's remaining claims in this area are devoid of authority and conclusory. We deem them waived under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *Taylor*, 32 Mass. App. Ct. 570, 580 (1992).

*Judgments affirmed.*