## Commonwealth *vs.* Robert E. Goodreau.

No. 01-P-1189.

Hampden. January 14, 2003. - July 14, 2003.

Present: Lenk, Cypher, & Mills, JJ.

Further appellate review granted, 440 Mass. 1103 (2003).

*Practice, Criminal,* Plea, New trial, Psychiatric examination, Defendant's competency, Assistance of counsel.

The judge hearing a motion to withdraw a plea of guilty to murder in the second degree and for a new trial erred in denying the motion without conducting an evidentiary hearing, where the defendant's motion papers, taken together, contained facially credible information of sufficient quality to raise a serious question about whether the defendant was competent at the time of his plea [557-559]; however, the judge did not abuse his discretion in denying without an evidentiary hearing the portion of the motion for a new trial that suggested that the defendant's trial counsel was ineffective, where the defendant's motion and supporting materials did not disclose which defenses the attorney failed to investigate, prepare, or present or how they might have been successful, and where the trial counsel's affidavit indicated that he had advised the defendant many times before the guilty plea that there was a strong manslaughter defense and that counsel discussed with the defendant how the evidence could support this defense [559-560].

Indictment found and returned in the Superior Court Department on June 10, 1991.

A plea of guilty was accepted by *Charles R. Alberti,* J., and a motion for a new trial, filed on October 31, 1997, was considered by *Thomas J. Curley, Jr.,* J.

*Alan Jay Black* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

Lenk, J. The issue before us is whether the motion judge should have conducted an evidentiary hearing before acting on the defendant's motion to withdraw his guilty plea and for a new trial. We conclude that, in the circumstances, such a hearing should have been held.

*Procedural background.* The defendant, Robert E. Goodreau, was indicted for murder in the first degree on June 10, 1991, in connection with the shooting death on May 19, 1991, of the twenty-two year old son of the defendant's live-in girlfriend. He pleaded guilty to murder in the second degree on February 24, 1992. Although assigned a lawyer on June 1, 1995, for purposes of seeking postconviction relief, the defendant's motion to withdraw his guilty plea and for a new trial was not filed until October 31, 1997. The delay is not explained in the record.

The grounds for the defendant's motion under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), were three-fold: that due to mental illness and chronic substance abuse he was incompetent to enter a plea when he did; that his plea was accordingly not voluntary; and that his trial counsel had been ineffective in several respects. The defendant's motion was supported with five affidavits: his own; his brother's; that of his appellate lawyer; that of his trial lawyer; and that of a psychiatrist who had recently performed a forensic psychiatric evaluation of him. Also before the motion judge were transcripts of the 1992 plea colloquy and of certain grand jury testimony, a statement that the defendant had given police shortly after the shooting, reports of competency examinations performed by two forensic psychologists a number of months before the defendant tendered his plea, records relating to treatment the defendant received over the period from 1973 to 1985 at an alcohol detoxification center, and records of his stay at Bridgewater State Hospital before his guilty plea.

For reasons not clear in the record, the motion was not assigned to a Superior Court judge until April 2, 2001. Because the plea judge had previously retired, the motion was assigned to a different judge. The motion judge reviewed the defendant's motion and supporting materials and, on May 10, 2001, without conducting a hearing of any kind, denied the motion, ruling that it raised no substantial issue warranting an evidentiary hearing. The judge also stated that his ruling was based on the Commonwealth's response.

*The applicable law.* Massachusetts Rule of Criminal Procedure 30(c)(3), 378 Mass. 901 (1979), permits a judge to rule on "the issue or issues presented by [a motion for postconviction relief] on the basis of the facts alleged in the affidavits

[accompanying such a motion] without further hearing if no substantial issue is raised by the motion or affidavits." Whether a substantial issue has been raised such that an evidentiary hearing is then required depends, on the one hand, on the seriousness of the issue and, on the other, on the adequacy of the defendant's showing. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257-258 (1981); *Commonwealth* v. *Britto*, 433 Mass. 596, 608 (2001). Where, as here, the issues raised are unquestionably serious, see, e.g., *Commonwealth* v. *Licata*, 412 Mass. 654, 660-661 (1992) (effective assistance of counsel); *Commonwealth* v. *Robbins*, 431 Mass. 442, 444-447, 449-452 (2000) (competency to plead and voluntariness of plea), the determinative factor is the adequacy of the defendant's showing.

To be adequate in this regard, the motion and affidavits must contain credible information of sufficient quality, see *Commonwealth* v. *Meggs*, 30 Mass. App. Ct. 111, 115 (1991), to "raise[] a serious question," *Commonwealth* v. *Conaghan*, 433 Mass. 105, 110 (2000), or "cast doubt on," *Commonwealth* v. *Britto, supra*, the question under consideration. Otherwise put, the motion and affidavits must have enough qualitative heft to them to warrant further exploration of the issues. See *Commonwealth* v. *Lopez*, 426 Mass. 657, 663 (1998). An adequate showing is in the nature of a "prima facie case for relief," see Mass.R.Crim.P. 30(c)(4), 378 Mass. 901 (1979), yet the papers, standing alone, need not prove the issue. See *Commonwealth* v. *Licata*, 412 Mass. at 662.

In our review of a motion judge's assessment as to whether the motion papers raise a serious issue warranting an evidentiary hearing, we will ordinarily "defer to the discretion of a trial judge." *Id.* at 660. This is particularly so when the motion judge was either the trial judge or the plea judge because in those circumstances, that judge typically has had the opportunity to observe the defendant's demeanor, has seen defense counsel in action, and has familiarity with the issues and the evidence. See, e.g., *Commonwealth* v. *Russin*, 420 Mass. 309, 317 (1995); *Commonwealth* v. *DeVincent*, 421 Mass. 64, 69 (1995); *Commonwealth* v. *Robbins, supra* at 446-447; *Commonwealth* v. *Britto, supra*; *Commonwealth* v. *Arriaga*, 438 Mass. 556, 570-571 (2003); *Commonwealth* v. *Cook*, 438 Mass. 766, 775-777

(2003); *Commonwealth* v. *Facella*, 42 Mass. App. Ct. 354, 358 (1996). Compare *Commonwealth* v. *Conaghan, supra* at 107 n.4, 110-111 (motion judge not trial judge and decision reversed); *Commonwealth* v. *Meggs, supra* at 114-115 (same). Contrast *Commonwealth* v. *Thurston,* 53 Mass. App. Ct. 548, 552-554 (2002) (motion judge not plea judge but decision affirmed because judge need not credit single, plainly self-serving affidavit). Even where the motion judge was the trial or plea judge, however, deference will not carry the day in the face of a documentary showing whose adequacy is apparent. See *Commonwealth* v. *Licata, supra* at 660-662; *Commonwealth* v. *Moreau,* 30 Mass. App. Ct. 677, 681-683 (1991), cert. denied, 502 U.S. 1049 (1992); *Commonwealth* v. *Caban,* 48 Mass. App. Ct. 179, 183-184 (1999).

*The 1991 psychological evaluations.* On June 3, 1991, several weeks after the shooting, Dr. Barry Nigrosh examined the defendant for competency and criminal responsibility pursuant to G. L. c. 123, § 15(*a*). Nigrosh found him "in most respects capable of understanding the proceedings which he face[d]," but could not give an unqualified opinion as to competency, primarily because of evidence of the defendant's "self-defeating motivation and desire for punishment which could interfere with his participation in defense planning and might be considered irrational." For this reason, Dr. Wesley Profit conducted a subsequent examination on July 10, 1991, pursuant to G. L. c. 123, § 15(*b*). Profit concluded that the defendant did not suffer from a major mental illness and found him competent to stand trial.

*The plea colloquy.* The defendant pleaded guilty to murder in the second degree on February 24, 1992. In so doing, he acknowledged that, on May 19, 1991, while at the apartment he shared with the victim's mother, he shot the victim with whom he had been drinking a considerable amount of wine, playing chess, and arguing. The argument continued after the game, escalated into threats, and the defendant then went into a bedroom, returned with a .22 caliber rifle, fired two rounds, and killed the victim when one round struck him in the chest. During the colloquy, the defendant denied that he "ever had a problem with mental illness," denied that he ever had a drug

problem, but acknowledged that he was an alcoholic; the judge so found as part of his determination that the plea was tendered voluntarily.

*The affidavits.*[1]

a. *The psychiatrist.* Dr. Virginia E. Merritt opined in 1997 that "it is likely that Mr. Goodreau was incompetent to stand trial at the time he made his plea." She reached this conclusion after interviewing the defendant[2] and reviewing the 1991 reports written by Nigrosh and Profit, as well as the defendant's Bridgewater State Hospital records.

Notwithstanding Profit's determination that the defendant was competent and had no psychiatric illness, Merritt indicated that contemporaneous hospital records disclosed contrary information, e.g., that the psychiatrist at Bridgewater considered the defendant to have, and treated him with psychiatric medications for, bipolar disorder and/or major depression. Merritt noted further that Nigrosh had raised questions concerning a possible underlying organic condition caused by "alcohol or chemical toxicity," given the defendant's job-related exposure to chemicals and his chronic and long-term alcoholism. Such a condition was a reasonable concern, as was possible brain damage, Merritt stated. Both would have had a bearing on competency, but neither was sufficiently evaluated at the time by means of blood tests, IQ testing, or neuropsychological testing. Finally, Merritt took into account the defendant's own report that he was suicidal during his Bridgewater hospitalization and had made a serious suicide attempt after being transferred from Bridgewater to jail for pretrial detention. She deemed credible his attempted drug overdose by virtue of the details he provided her. She stated that "[t]his suggests that suicidal thinking was a strong influence on his work with his attorney and the way he handled his attorney's advice."

---

[1] The affidavit of appellate counsel refers, inter alia, to conversations he had with Dr. Merritt, the psychiatrist he retained, and with trial counsel. To the extent that such affidavit supplements information contained in the psychiatrist's and trial lawyer's affidavits, it merits some consideration. It is otherwise replete with counsel's conclusions and beliefs, and to that extent, it is devoid of evidentiary significance. Cf. *Commonwealth* v. *Grant*, 426 Mass. 667, 673 (1998); *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 639 (2001).

[2] See note 1, *supra.*

b. *The defendant*. The defendant's affidavit recounts his alcoholism, his periodic blackouts, his lack of memory as to much of what happened on the day of the shooting, his subsequent suicide attempt, and his state of mind at the time he tendered his plea (shock, remorse, desire to punish himself, and depression — the foregoing affecting his ability to think clearly, discuss matters with his lawyer, assist in preparing a defense, and listen to any legal advice).

c. *The defendant's brother*. This affidavit confirms the defendant's chronic alcoholism and periodic blackouts, describes the defendant's behavior until immediately before the change of plea (deeply depressed, not communicative, and wanting only to talk of ending his life), and states that the defendant told him of the defendant's attempted suicide by drug overdose.

d. *The defendant's trial lawyer*. Attorney Richard Rubin stated in his affidavit that, despite his advice to the effect that the defendant had a strong manslaughter defense and that it was not probable that he would be convicted of murder in the first degree, the defendant did not wish to go to trial and instead pleaded to murder in the second degree. Mr. Rubin also stated in his affidavit that he had not been aware of the defendant's suicidal mindset or of his suicide attempt before the plea. Mr. Rubin told the defendant's appellate lawyer that the "defendant was very depressed at the time of his change of plea and communication was difficult between attorney and client."[3]

*Analysis*. The defendant claims that he was not competent to tender a voluntary plea. He also claims that his trial counsel afforded ineffective assistance by, among other things, failing to bring to the plea judge's attention the issue of the defendant's competency, failing to familiarize himself with the defendant's medical records, failing to retain an independent psychiatrist to look at such records, and failing to pursue an evaluation of the defendant's possible underlying organic condition caused by alcohol or chemical toxicity.

a. *Competency and voluntariness*. The question of whether the defendant was competent to plead guilty is inextricably bound up with the question whether the plea was tendered

[3]See note 1, *supra*.

voluntarily and knowingly. See *Commonwealth* v. *Robbins*, 431 Mass. at 444-445, and cases cited. The test for determining competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Commonwealth* v. *Hill*, 375 Mass. 50, 52 (1978), quoting from *Dusky* v. *United States*, 362 U.S. 402, 402 (1960). The Commonwealth contends that an evidentiary hearing was unnecessary both because the material before the motion judge plainly established the defendant's competency and because the defendant's showing was not adequate to call into question his competency to tender a voluntary plea.

The Commonwealth suggests that the defendant's competency was established by Profit's evaluation, by the defendant's acknowledgment during the plea colloquy that he did not suffer from mental illness, by the absence of anything in the transcript of the plea colloquy to indicate that the defendant's conduct or demeanor during the plea hearing was worrisome, and by the plea judge's findings as to the defendant's ability to communicate and other similar indicia of voluntariness. The Commonwealth then details inadequacies in each of the defendant's supporting affidavits, e.g., the defendant's affidavit is self-serving; trial counsel's affidavit does not support the defendant's stated inability to consult with counsel or corroborate his suicide attempt; the appellate lawyer's affidavit supplementing trial counsel's affidavit is hearsay; the psychiatrist's opinions are speculative; and not only are the brother's observations biased, but he is not qualified to say whether the defendant was depressed.

Without doubt, the defendant's submissions are not airtight. Nonetheless, the test for whether they raise a serious issue warranting further scrutiny is not whether the submissions prove the issue, but whether they cast real doubt on it. See, e.g., *Commonwealth* v. *Licata*, 412 Mass. at 662; *Commonwealth* v. *Britto*, 433 Mass. at 608. The defendant's motion papers, taken together, contain facially credible information of sufficient quality to raise a serious question about whether the defendant was competent at the time of his plea. Neither the plea colloquy nor

Profit's 1991 competency determination are dispositive of the point in that if the psychiatrist, Merritt, is correct, the defendant was incorrect when he told the plea judge that he was free from mental illness, and Profit's assessment was made without first having performed tests necessary to ascertain competency. If the defendant's trial lawyer did indeed have difficulty communicating with the defendant prior to the plea, and if the defendant's reported suicide attempt occurred, as Merritt believes it likely did, that also is cause for concern. See *United States* v. *Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997). Cf. *Commonwealth* v. *Russin*, 420 Mass. at 317-318; *Commonwealth* v. *Lameire*, 50 Mass. App. Ct. 271, 274, 277-278 (2000).

Because the motion judge was not the plea judge, we cannot take into account anything that he might otherwise have been able to add to the mix. This is to say, the motion judge was not in a position to call upon any memory of what took place at the plea colloquy that might have been of aid in evaluating the defendant's motion papers and in resolving the questions they raise, nor did he conduct a nonevidentiary hearing on the motion to explore further such questions. We do not suggest by any means that every new trial motion heard by a judge who was not the plea or trial judge requires an evidentiary hearing. However, at least in the circumstances of this case, serious questions were raised that are best answered following an evidentiary hearing at which testimony is developed more fully and is subject to searching cross-examination.

b. *Ineffective assistance.* To the extent that the issue of the defendant's competency to plead in 1992 will be substantively explored at an evidentiary hearing, little is gained by additional discussion here as to whether trial counsel should have done more at that time. The matter of whether counsel's efforts could have accomplished anything material had he pursued the issue can best be addressed at, and resolved after, such hearing.

To the extent, however, that the defendant's motion papers suggest that his trial counsel was ineffective because he failed to investigate, prepare, or present adequate defenses and to advise the defendant adequately as to which defenses were available to him, the contention is opaque at best. The defendant's motion and supporting material do not disclose

which defenses the attorney failed to investigate, prepare, or present or how they might have been successful. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). Moreover, trial counsel's affidavit indicates that he had advised the defendant many times before the guilty plea to murder in the second degree that there was a strong manslaughter defense. Trial counsel also discussed with the defendant how this defense could be supported by the evidence. The defendant's competency to heed such advice is a different matter from whether counsel adequately pursued defenses on the defendant's behalf. As to the latter, the motion judge was not required to speculate and did not abuse his discretion in denying this aspect of the motion for a new trial without an evidentiary hearing.

*Conclusion.* We vacate the judge's ruling on the motion for a new trial, and we remand the motion to the Superior Court for an evidentiary hearing consistent with this opinion.

*So ordered.*